GUS STATHIS, Plaintiff-Appellant, v. FIRST ARLINGTON NATIONAL BANK *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—2209

Opinion filed January 31, 1992.—Modified on denial of rehearing March 20, 1992.

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Harry C. Lee, of counsel), for appellant.

Bradley Wartman and Peter Andjelkovich, both of Peter Andjelkovich & Associates, of Chicago, for appellees Denis J. Rintz and Marilyn Rintz.

Fagel & Haber, of Chicago (Steven J. Teplinsky and Alvin D. Meyers, of counsel), for appellee First Arlington National Bank.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff Gus Stathis (Stathis) appeals from the circuit court's grant of summary judgment in favor of defendants, First Arlington National Bank *et al.*, on count I of a two-count complaint, which alleged that defendants conspired to defraud and injure Stathis by obtaining the use and benefit of his real estate without paying full consideration. Plaintiff argues that the trial court erred by granting summary judgment to all of the named defendants or, in the alternative, that the trial court should have granted his post-judgment motion to vacate the summary judgment order and allowed him to file a fourth amended complaint which would have added two new counts. For the following reasons we affirm the judgment of the trial court.

This is the third time that the above-named parties have come before this court. (See *First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 413 N.E.2d 1288; *First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403, 450 N.E.2d 833.) The underlying dispute dates back almost 20 years and, if it

continues without compromise, it may rival the 100 Years War in duration. Because the facts of the underlying dispute have been set forth in the previous appeals, we shall endeavor to keep our restatement of them here brief.

*STATHIS I*

In 1973 Stathis conveyed certain real estate to Denis Rintz, Ralph Edgar, and Phillip Grandinetti. Part of the consideration was a promissory note dated March 30, 1973 (hereafter March note), in the principal amount of $575,000, executed by the three purchasers and their wives. The note provided that the first principal payment of $275,000 would be due on September 30, 1975, and the final payment of $300,000 would be due on March 30, 1976. Interest was assessed at the rate of 8% of the outstanding principal, with the first payment of interest due on March 30, 1974, and subsequent payments due on March 30 of each successive year.

The note further provided that the outstanding debt was to be secured by a letter of credit in the amount of $575,000 which was to be replaced each year at least 30 days prior to its expiration date. In the event that the letter of credit was not timely renewed, or in the event of default in the payment of either the principal or interest, the balance due could be accelerated and become immediately payable without notice. Rintz, Grandinetti and Edgar arranged for a letter of credit through the First Arlington National Bank (Bank) in exchange for a demand note payable to the Bank in the amount of $575,000 at 10% annual interest and secured by certain property.

The purchasers failed to pay the first interest payment on the March note, which was due on March 30, 1974, and Stathis' attorney sent notices of default to Rintz, Grandinetti and Edgar and their respective wives. In response, Grandinetti entered into a separate agreement with Stathis on April 23, 1974, whereby he agreed to pay "his share" of the interest due and indemnify Stathis for the balance of the interest due. Grandinetti then executed two notes, one for one-third of the interest due and a second note for two-thirds of the interest due. According to the agreement, Stathis was to attempt to collect the two-thirds interest from Rintz and Edgar before making demand on the second note.

In addition to attempting to collect on the interest due, Stathis also sought payment of the principal via the letter of credit. On April 25, 1974, he presented a sight draft to the Bank in the amount of $575,000, along with certain required documentation nec-

essary for payment on the letter of credit. The Bank, however, refused to honor the letter of credit.

On June 14, 1974, the Bank filed a complaint for declaratory judgment against Stathis, the Rintzes, the Grandinettis and the Edgars, seeking a determination of its rights and obligations under the letter of credit. (The legal proceedings associated with this complaint are herein referred to, collectively, as *Stathis I*.) The parties filed motions for summary judgment and the trial court granted the Bank's motion, finding that Stathis' April 1974 agreement with Grandinetti released all accommodation parties, including the Bank. Stathis appealed.

In a 14-page opinion issued on this first appeal (*First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 413 N.E.2d 1288), this court reversed the decision of the trial court but did not grant Stathis' motion for summary judgment. Instead, the court remanded the matter back to the trial court for further consideration of other arguments raised by the Bank in opposition to Stathis' motion for summary judgment.

On remand the trial court entered summary judgment in favor of Stathis, deciding that Stathis had tendered all of the necessary documents, which complied on their face with the requirements of the letter of credit, so that the Bank was obligated to honor the letter of credit. In addition, even though the letter of credit did not provide for interest in the event that it was dishonored, the trial court ruled that Stathis was entitled to 5% prejudgment interest, based upon the statutory rate available under the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 2).

The Bank appealed the court's rulings and Stathis cross-appealed the award of only 5% interest. Stathis argued that an 8% rate rather than the 5% rate of interest would be more equitable and would make him whole. In this court's opinion on the second appeal (*First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403, 450 N.E.2d 833), we affirmed the trial court's rulings on all matters, including the amount of prejudgment interest due to Stathis.

On November 1, 1983, nearly 10 years after the first demand on the letter of credit, the Bank honored the letter of credit and paid the court-ordered interest.

*STATHIS II*

In 1976, while the Bank's complaint for declaratory judgment progressed through the courts as outlined above, Stathis filed a

complaint naming as party defendants the Bank and certain individual bank officers, in addition to the Rintzes, the Grandinettis and the Edgars. (These proceedings shall be collectively referred to as *Stathis II*.) The complaint was amended once in 1985 and again in August 1986, three years after this court delivered its opinion in the second appeal in *Stathis I*. It was Stathis' third amended complaint which ultimately went before the trial court on the defendants' motions for summary judgment.

This 27-page complaint contained two counts. In count I Stathis alleged that "the defendant Bank and its officers and directors *** wrongfully, willfully, wantonly, and tortiously conspired with defendants Dennis [*sic*] J. Rintz, Marilyn Rintz, Ralph L. Edgar and Judy Edgar and others, *inter alia*, to prevent plaintiff from promptly or fully recovering the amount due and owing to him on the March note or the amount due and owing to the plaintiff on the letter of credit and to unlawfully divert plaintiff's funds and property to their own use and benefit." He further claimed that, as a direct result of this conspiracy, he suffered actual damages in an amount in excess of $1 million. When asked in interrogatories to "specify each item of loss or damage and the amount thereof that comprises the $1,000,000 in compensatory damages that Stathis claims in Count I," he responded initially "[t]he time value of approximately $575,000 for a period in excess of 13 years." However, in a "supplement to plaintiff's answers to interrogatories" filed October 28, 1987, Stathis stated the following:

> "In addition to the compensatory damages set forth in plaintiff's original answer, plaintiff claims his residual rights in the promissory note dated March 30, 1973 which the bank wrongfully withheld from plaintiff. Said residual rights include all costs of collection of the $575,000 incurred by plaintiff, including attorney fees."

Count II alleged a breach of contract and sought recovery from the Rintzes, the Grandinettis and the Edgars, under the terms of the March note.

On November 13, 1989, the Bank filed a motion for summary judgment on count I of Stathis' third amended complaint. On April 9, 1990, the trial court heard the motion and granted the Bank summary judgment in its favor finding that Stathis was collaterally estopped from seeking the damages being sought in count I. Stathis subsequently moved the trial court to reconsider or vacate the summary judgment order in the Bank's favor and sought leave to file a fourth amended complaint.

In the meantime, the Rintzes, the Grandinettis, and the Edgars, as well as the various officers of the Bank named as party defendants in Stathis' complaint, moved for summary judgment on count I. On July 2, 1990, the trial court heard Stathis' motions along with the defendants' motions for summary judgment. The trial court denied Stathis' motions and granted the remaining defendants summary judgment in their favor on count I. Although count II still pends before the trial court, the orders granting the defendants summary judgment were made final and appealable by the addition of the necessary language set forth in Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

Stathis now appeals from the April 10, 1990, and July 5, 1990, orders granting all of the defendants summary judgment in their favor. He argues that the trial court erred in granting the defendants' motions or, in the alternative, that the trial court should have allowed him to file a fourth amended complaint. Only the Bank and Denis and Marilyn Rintz have appeared and filed briefs in this appeal.

■ Since the trial court granted summary judgment on the basis that plaintiff was not entitled to any compensatory damages on his claim sounding in tort which he had not already been compensated for in his earlier complaint on the letter of credit, we must first decide, assuming that plaintiff could successfully advance his claim against the defendants sounding in tort, what the measure of damages would be, *i.e.*, what plaintiff would be entitled to recover. It is plaintiff's position that, because he has claimed that all of the named defendants were part of some collective effort to defraud him of his property and/or his funds in connection with the real estate purchase that was at the root of the entire conflict, damages should be measured by the terms of the March note. We see no reason to draw this conclusion.

Rather, it would seem that plaintiff's damages should be measured by the value of the property, *i.e.*, $575,000, plus reasonable interest. We do not believe that plaintiff would be entitled to recover the costs incurred and attorney fees expended in the previous suit by virtue of this tort action. This is not a situation that falls within the exception to the "American Rule," which typically forbids recovery of litigation costs against a tortfeasor. (See *National Wrecking Co. v. Coleman* (1985), 139 Ill. App. 3d 979, 487 N.E.2d 1164.) The exception comes into play " 'where the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to in-

cur expense to protect his interest.' " (*National Wrecking Co. v. Coleman*, 139 Ill. App. 3d at 982, 487 N.E.2d at 1166, quoting *Ritter v. Ritter* (1943), 381 Ill. 549, 554, 46 N.E.2d 41.) In this case plaintiff is not suing the defendants to recover the cost of litigation with a third party, but rather to recover costs of previous litigation with one of the defendants and alleged tortfeasor (the Bank) when these costs were not recoverable in the underlying action.

Consequently, the only real issue left before this court is whether the judgments and rulings handed down by the court in the proceedings referred to as *Stathis I* are controlling so as to bar consideration of the remaining issue, *i.e.*, the measure of reasonable interest due, by application of either the doctrine of *res judicata* or collateral estoppel (estoppel by verdict). We believe that they are.

■ As noted in *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959, a prior judgment may have preclusive effects in a subsequent action under both *res judicata* and collateral estoppel. The doctrine of *res judicata* applies when the second suit is between the same parties and is based upon the same cause of action as the first. (*Northern Trust Co. v. Aetna Life & Surety Co.* (1989), 192 Ill. App. 3d 901, 549 N.E.2d 712.) A final judgment on the merits rendered by a court of competent jurisdiction constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action and extends to all matters that were litigated or could have been litigated. *Carey v. Neal, Cortina & Associates* (1991), 216 Ill. App. 3d 51, 576 N.E.2d 220.

■ Collateral estoppel, on the other hand, applies when a party participates in two separate and consecutive cases arising from different causes of action and some controlling fact or question material to the determination of both cases has been adjudicated against the party in the former suit by a court of competent jurisdiction. (*Housing Authority*, 101 Ill. 2d at 252; *Northern Trust Co.*, 192 Ill. App. 3d at 904.) Under collateral estoppel, the judgment in the first suit is binding only with regard to issues actually litigated in that suit. *Benton v. Smith* (1987), 157 Ill. App. 3d 847, 510 N.E.2d 952.

■ In count I of *Stathis II*, the cause of action sounds in tort and alleges fraud. This is a different cause of action raising different issues of fact and law than were raised in the declaratory action in *Stathis I*, where the issue was whether the Bank was required to honor the letter of credit. Thus, the cause of action in *Stathis II* is not precluded by the judgment in *Stathis I* by application of *res judicata*.

■ Nevertheless, we find that count I of *Stathis II* cannot stand as a cause of action. This is because a valid cause of action does not exist unless the plaintiff suffers both injury and damages (*Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 253 N.E.2d 45) and, as the trial court found, Stathis has failed to allege any damages resulting from the fraud for which he has not already been compensated.

In count I, despite the fact that it alleges conspiracy and fraud, Stathis seeks to recover the same compensation he earlier sought, "the time value of approximately $575,000" which was wrongfully withheld from him. However, this element of damages was already awarded to Stathis in *Stathis I*.

■ We reach this conclusion, as the trial court did, based upon the decision in *National Wrecking Co. v. Coleman* (1985), 139 Ill. App. 3d 979, 487 N.E.2d 1164. In *National Wrecking*, National sued Elston for $82,100 on a breach of contract action and sued Heery for the same $82,100 plus punitive damages in an interference with contract action. After National was granted summary judgment on the count against Elston, Heery moved for judgment on the pleadings, contending that National's actual damages had been satisfied by Elston and that punitive damages would not lie absent actual damages. National then moved to amend his complaint against Heery to allege as actual damages the attorney fees expended in the suit against Elston and "the difference between the market investment value of the improperly withheld $82,100 and the statutory 5% prejudgment interest awarded against Elston." The trial court denied the motion and National appealed. On appeal the court stated:

> "National recovered the statutory prejudgment interest of 5% from Elston and now seeks the difference between 5% and 'money market' interest from Heery. National has cited no authority for this proposed recovery other than the general proposition that Heery, as the alleged tortfeasor, is liable for the natural consequences of its action. [Citation.] National has attempted to characterize this lost investment value as 'damages'; however, we deem the loss clearly as 'interest on damages,' which is proper only if expressly authorized by statute or agreement." 139 Ill. App. 3d at 984.

The situation is nearly identical in the case at bar. Stathis attempts, in count I, to recover for the lost investment value of the money improperly withheld from him. However, just as the court in *National Wrecking* held, we find that the lost investment value of

the $575,000 is not an element of damages in and of itself but, rather, interest on damages. As such, it is equivalent to the prejudgment interest available on the disputed sum of money. Since Stathis was already awarded prejudgment interest, the actual damages being sought here have already been satisfied. Furthermore, since Stathis has failed to allege any actual damages, he has no valid claim for punitive damages.

We realize that Stathis contends that the measure of the "lost investment value" of the $575,000 should be arrived at by reference to the March note, which allowed for 8% interest, so that the "actual damages" being sought in count I is the amount of money which comprises the difference between the 5% prejudgment interest and the 8% interest provided for in the note. However, we find no basis for reaching this conclusion. In fact, we are collaterally estopped from reaching such a conclusion by this court's decision in *First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403, 450 N.E.2d 833.

Even though, in the present case, Stathis bases his cause of action on tort rather than the letter of credit, he still seeks only to obtain interest on damages, which is only available if authorized by statute or contractual agreement. Thus, we are back to the same issue decided in the previous appeal, *i.e.*, whether there was any basis for awarding Stathis interest on the money wrongfully withheld and the measure of that interest.

In the previous appeal Stathis attempted to recover the "more equitable" 8% rate of interest, claiming that he should have been put in "as good a position as if the other party had performed." This court held that 8% interest as an equitable amount could only be arrived at by speculation and that the only basis for awarding interest was the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 2), which allowed for 5% interest in the event of unreasonable or vexatious delay in payment of monies due on any instrument of writing. We believe that this determination of the amount of interest owed to Stathis is binding upon the court in the new cause of action, despite the fact that it sounds in tort.

Since this court has found, as the trial court did below, that Stathis has no valid cause of action due to the fact that he has alleged no damages, we find that the trial court properly granted all defendants summary judgment in their favor. Furthermore, since Stathis failed to allege any different damages in the proposed fourth amended complaint he sought to file, we find that the trial court did not abuse its discretion in refusing to allow the amended

complaint. See *Hill v. Jones* (1990), 198 Ill. App. 3d 854, 857, 556 N.E.2d 613 (decision to vacate a judgment and permit further amendment rests within the sound discretion of the trial court, considering the stage in the proceedings that the proposed amendment is brought).

For the reasons stated above, we affirm the orders of the trial court granting the defendants summary judgment in their favor on count I of Stathis' complaint and denying Stathis' motion to amend the complaint.

Affirmed.

McNULTY, P.J., and GORDON, J., concur.