665 N.E.2d 36 (1996)
In re Parentage of Sara RODGERS, A Minor (The People ex rel. Linda Rodgers, Petitioner-Appellant,
v.
Robert Lochmann, Respondent-Appellee).
No. 5-94-0831.
Appellate Court of Illinois, Fifth District.
May 8, 1996.
William Haine, State's Attorney, Edwardsville, Norbert J. Goetten, Director; Stephen E. Norris, Deputy Director; Rebecca Sanders, Staff Attorney; Office of the State's Attorneys Appellate Prosecutor, Mt. Vernon, for Appellant.
Casper S. Nighohossian, Granite City, for Appellee.
Justice GOLDENHERSH delivered the opinion of the court:
Petitioner, Linda Rodgers, on behalf of Sara Rodgers, a minor, by and through the State's Attorney of Madison County, filed in the circuit court of Madison County a petition to determine the existence of a father and child relationship. Respondent, Robert Lochmann, filed a motion to dismiss on the basis of res judicata due to an earlier ruling in the parties' dissolution proceeding in which it was determined, on the basis of ultrasound results, that respondent was not the biological father of Sara. Sara was not a party to the dissolution proceedings, nor was she represented by a guardian ad litem. After a hearing on respondent's motion to dismiss, the trial court dismissed the petition with prejudice. The issue presented for review is whether res judicata or collateral estoppel operates to bar Sara Rodgers from bringing a petition to determine the existence of the father-child relationship. We reverse and remand.

I.
The facts of this case are as follows. According to petitioner, she and respondent engaged in sexual relations for the first time on October 26, 1983. The two were married on November 11, 1983, and separated on or about November 15, 1983. Soon thereafter, respondent filed his petition for dissolution of marriage, and petitioner filed a cross-petition; however, petitioner later voluntarily dismissed her cross-petition. The cause proceeded to a contested hearing on respondent's petition.
At the contested hearing, held on January 20, 1984, petitioner was pregnant with Sara. Petitioner was represented by counsel, but the unborn child was not represented by a guardian ad litem. Petitioner testified that the first time the parties engaged in sexual intercourse was on October 26, 1983. An ultrasound examination was performed on December 14, 1983, and the results were submitted into evidence. The ultrasound report contained the following comments:

*37 "COMMENTS: This scan is done for the estimation of fetal viability in a patient with first trimester bleeding. The scan shows a pregnant uterus with overall dimensions corresponding to about 10 or 11 weeks of gestation. Inside of the uterus, there is a gestational sac and inside of the gestational sac, there is a fetus with a crown rump length of 2 cm., value that corresponds to eight weeks plus five days of gestation. This is not consistent with the estimation of gestational age based on the patient's last menstrual period. There is positive fetal heart motion in real time ultrasound examination."
The report then concluded that "[t]he the ultrasonic appearance is that of a viable pregnancy of 8 weeks of gestation." A gestational age of eight weeks means that the conception of Sara occurred one week prior to the time the parties engaged in sexual intercourse. Having heard the parties' testimony and considered the ultrasound report, the court concluded in the judgment of dissolution, entered on March 18, 1984, that respondent was not the father of petitioner's unborn child. Petitioner was found liable for all medical expenses incurred in connection with her pregnancy.
On December 18, 1990, petitioner, in behalf of Sara, by the State's Attorney, filed a petition to determine the existence of a father-child relationship. The petition alleged that respondent is the natural father of Sara and requested, inter alia, a determination of this fact. Respondent denied being Sara's father. Two sets of blood tests were requested, one by the State and one by respondent. The results of these tests showed that respondent could not be excluded as the biological father. One test concluded that "the probability of paternity is 99.99% as compared to an untested random man of the North American population." The other test concluded: "The cumulative paternity index (genetic odds in favor of paternity) is 4,565. The relative chance of paternity, assuming a 50% prior chance, is 99.98%. 99.68% of falsely accused men would be excluded as the father."
On November 22, 1994, respondent filed his motion to dismiss, arguing that the doctrine of res judicata was applicable because he was previously found not to be the father in the dissolution proceedings. Following a hearing, the trial court granted the motion to dismiss with prejudice. The trial court's order specifically found that Draper v. Truitt, 250 Ill.App.3d 654, 190 Ill.Dec. 333, 621 N.E.2d 202 (1993), was controlling, that the hearing in the dissolution proceeding was a contested matter, that the judgment of dissolution cited competent medical evidence and testimony as the basis for its finding and order, that respondent was not the father of petitioner's unborn child, that it was not the place or position of the court to assess whether the ultrasound report was competent evidence in the dissolution proceeding, that the prior court found the ultrasound report to be competent medical evidence, that the trial court was not going to second-guess that determination, and that the unborn child was adequately represented in the dissolution proceeding.

II.
The issue we are asked to address is whether res judicata and/or collateral estoppel operated to bar Sara from bringing a petition to determine the existence of a father-child relationship. The State, on behalf of Sara, contends that Sara was not a party to or in privity with her mother in the prior dissolution proceeding, was not represented in that proceeding and, therefore, is not bound by the determination made in the dissolution proceeding that respondent is not her father. The State argues that it would be an injustice to preclude Sara from litigating the issue of paternity where new, significant, and material changes in the facts and conditions have occurred since the dissolution proceedings and Sara, then unborn, did not have a full and fair opportunity to litigate the issue of paternity. The State specifically cites Simcox v. Simcox, 131 Ill.2d 491, 137 Ill.Dec. 664, 546 N.E.2d 609 (1989), in support of its contentions. Respondent replies that Simcox is distinguishable from the facts of the case at bar because in the instant case the issue of paternity was adjudicated in a contested dissolution hearing between respondent and petitioner, whereas in Simcox an uncontested judgment of dissolution was entered. Simcox, 131 Ill.2d at 494, 137 Ill. *38 Dec. at 665, 546 N.E.2d at 610. Respondent further contends that the essential elements of res judicata have been met and that no new, significant, and/or material changes in facts and conditions have occurred since the dissolution proceeding. Respondent insists that there has been a full and fair adjudication on the merits as to his paternity, and that res judicata operates to bar the instant proceedings. We, however, agree with the State.
In the instant case, the trial court relied on Draper v. Truitt in making its determination that res judicata applied. In Draper, a mother brought a paternity action on behalf of her minor daughter, approximately 10 years after the mother had herself lost a paternity action against the same alleged father. The Draper court held that the minor's interest had been adequately represented by the mother in the earlier paternity action because the mother fully litigated the issue of paternity earlier. Draper, 250 Ill.App.3d at 659, 190 Ill.Dec. at 337, 621 N.E.2d at 206. The Draper court discussed both the doctrines of res judicata and collateral estoppel in its opinion:
"The doctrine of res judicata provides that a final judgment on the merits is conclusive as to the rights of the parties, constituting an absolute bar to a subsequent action involving the same claim, demand or cause of action. (Rodgers v. St. Mary's Hospital (1992), 149 Ill.2d 302, 311-12 [173 Ill.Dec. 642], 597 N.E.2d 616.) The doctrine applies when the second suit is between the same parties and is based upon the same cause of action as the first. (Stathis v. First Arlington National Bank (1992), 226 Ill.App.3d 47, 53 [168 Ill.Dec. 225], 589 N.E.2d 625.) Collateral estoppel applies when a party participates in two separate and consecutive cases arising from different causes of action and some controlling factor or question material to the determination of both cases has been adjudicated against the party in the former suit by a court of competent jurisdiction. (Stathis, 226 Ill.App.3d at 53[, 168 Ill.Dec. at 230, 589 N.E.2d at 630].) Utilization of collateral estoppel requires (1) that the issue be identical, (2) that there be a final judgment on the merits and (3) that the party against whom estoppel is asserted is a party or in privity with a party to the prior adjudication. (Illinois State Chamber of Commerce v. Pollution Control Board (1979), 78 Ill.2d 1, 7 [34 Ill.Dec. 334], 398 N.E.2d 9.) Defensive use of collateral estoppel involves a defendant who seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost. In re Owens (1988), 125 Ill.2d 390, 397 [126 Ill.Dec. 563], 532 N.E.2d 248; Sampson v. Cape Industries Ltd. (1992), 229 Ill.App.3d 943, 949 [171 Ill.Dec. 338], 593 N.E.2d 1158." Draper, 250 Ill.App.3d at 657-58 [190 Ill.Dec. at 336], 621 N.E.2d at 205.
In its opinion, the Draper court specifically referred to Simcox, decided earlier by our supreme court and relied on herein by the State.
In Simcox, the supreme court considered the issue of whether a subsequent paternity suit brought by a child against her mother's former husband and putative father was barred by an earlier determination of paternity in an uncontested dissolution proceeding between the parents. The child in Simcox sought to determine, inter alia, the existence of the father and child relationship between herself and Jeffrey Deere and to declare nonexistent the parent-child relationship between herself and her putative father, Christopher Simcox. The Simcox court held unequivocally that children are not privies of their parents in dissolution proceedings and, as such, are not bound by findings of paternity in such proceedings unless they are parties to the proceedings. Simcox, 131 Ill.2d at 497, 137 Ill.Dec. at 666, 546 N.E.2d at 611. The Simcox court reasoned that a child's interests are not properly represented in the dissolution proceeding and, therefore, the determination made in a dissolution proceeding should not be binding on a child. Simcox, 131 Ill.2d at 496-97, 137 Ill.Dec. at 666, 546 N.E.2d at 611.
Certainly, both Simcox and Draper are factually distinguishable from the case at bar. In Simcox, the issue of paternity was not contested in the earlier dissolution proceeding but was actually agreed to by the parties. In the instant case, the issue of paternity was *39 contested, and a hearing was held on the matter. On the other hand, Draper involved an earlier contested paternity hearing, not a dissolution proceeding, as we have in the instant case. The Draper court found that the child's interests were adequately represented in the paternity hearing. Draper, 250 Ill.App.3d at 659, 190 Ill.Dec. at 336-37, 621 N.E.2d at 205-06. Also, in Draper, there was no new evidence available, unlike the instant case, in which two new blood tests are available. The Draper court specifically stated: "Nothing in this record suggests that any different or additional evidence is available." Draper, 250 Ill.App.3d at 658, 190 Ill.Dec. at 337, 621 N.E.2d at 206. Here, the record contains new evidence tending to show that respondent is indeed the father of Sara. Two blood tests, one done at respondent's request, conclude that over 99% of falsely accused men would be excluded as the father. Accordingly, the instant case vividly illustrates the wisdom of the supreme court's holding in Simcox that children are not privies of their parents in a dissolution proceeding and are, thus, not bound by findings of paternity in such proceedings unless they were parties to the proceeding.
Moreover, even the Draper court recognized that there may be cases in which a child's interests are not adequately represented, stating, in pertinent part:

"Res judicata seeks to limit litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy and serves to protect persons from being twice vexed for the same cause, but it must also conform to due process, which requires that no person be deprived of personal or property rights without notice and an opportunity to be heard." Draper, 250 Ill.App.3d at 658, 190 Ill.Dec. at 337, 621 N.E.2d at 206.
Furthermore, we would be remiss not to point out that at least one other court has called into doubt the holding in Draper. In In re Marriage of Mesecher, 272 Ill.App.3d 73, 208 Ill.Dec. 837, 650 N.E.2d 294 (1995), our colleagues on the Fourth District Appellate Court specifically stated:
"We question the soundness of Draper, which seems to abandon the requirement of privity in cases where the issues are fully litigated. In some paternity cases (even fully litigated ones) there may be a difference between the mother's interests and the child's interests, as illustrated by the fact that under section 8 of the Illinois Parentage Act of 1984 a child may bring an action not later than two years after the child reaches the age of majority, while the mother's actions must be brought not later than two years after the birth of the child." Mesecher, 272 Ill.App.3d at 78, 208 Ill.Dec. at 840, 650 N.E.2d at 297.
We also note the specially concurring opinion in Simcox authored by Justice Ryan. Justice Ryan pointed out that in Simcox no guardian ad litem was appointed, but had one been appointed, the outcome, in his opinion, might have been different. Simcox, 131 Ill.2d at 499, 137 Ill.Dec. at 667, 546 N.E.2d at 612 (Ryan, J., specially concurring).
Likewise, we believe that had a guardian ad litem been appointed in the instant case, the outcome might have been different. Certainly, a guardian ad litem would have been more likely to question the accuracy of the ultrasound report and more likely to request that the question of parentage be held over until after the birth of Sara. Without the appointment of a guardian ad litem, especially here where the parties were married for such a short period of time, the underlying cause of action was a dissolution proceeding, not purely a paternity situation.
In conclusion, we find that under Simcox, Sara was not a privy in the dissolution proceeding, and, therefore, the defense of res judicata and collateral estoppel must fail. In the end, we believe that the best course of action is to determine each paternity case on an individual basis, as each case rises or falls on its particular set of facts. The facts in the instant case require reversal.
For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.
Reversed and remanded.
HOPKINS, P.J., and CHAPMAN, J., concur.