*In re* MARRIAGE OF JANET L. ALLEN, f/k/a Janet L. Hickenbottom, Petitioner-Appellant, and RICK E. HICKENBOTTOM, Respondent-Appellee.

Fourth District   No. 4—93—0868

Argued April 20, 1994.—Opinion filed July 15, 1994.—Rehearing denied August 24, 1994.

LUND, J., specially concurring.

Kristen H. Fischer (argued), of Kristen H. Fischer Law Offices, of Urbana, for appellant.

Betsy Pendleton Wong (argued), of Phebus, Winkelmann, Wong, Bramfeld & Zopf, of Urbana, for appellee.

Holly W. Jordan, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, guardian *ad litem.*

JUSTICE COOK delivered the opinion of the court:

On September 29, 1993, the trial court found petitioner Janet L. Allen to be in indirect civil contempt for her refusal to allow visitation between her child Hanna (f/k/a Hickenbottom) Allen, born February 13, 1989, and her former husband, respondent Rick E. Hickenbottom. Janet was ordered incarcerated in the Champaign County Correctional Facility, but the incarceration order was stayed to October 8, 1993. Janet was allowed to purge herself of contempt by producing the child at the office of Dr. Elizabeth Scott on October 1 for a visitation evaluation, and thereafter as ordered by the court. Janet did not produce the child at Dr. Scott's office on October 1, but filed a notice of appeal September 30. On October 8 the court again ordered Janet incarcerated, but stayed the incarceration pending appeal. Janet argues the finding of contempt was an abuse of discretion as she was unable to obey the visitation order because of the direction of Randall Dean Allen. She further argues the underlying visitation order is void because Rick is not Hanna's biological father. We affirm.

The parties were married November 1, 1980. During the marriage, Janet began an affair with Randall and had his child (Hanna) on February 13, 1989. After Janet learned she was pregnant she told Rick he "would be" the baby's father. Rick was present at the birth, and his name was placed on the birth certificate as the father of the child. The parties lived together with Hanna for the first two years of the child's life. Rick was aware at all times he was not the biological father of Hanna, but she grew up calling him "Daddy."

Unbeknownst to Rick, Janet took Hanna for frequent visits with Randall during the week and on weekends. Randall cared for Hanna by himself on several weekends while the parties were still married. Apparently Janet told Rick she was taking the child with her on out-of-town business (when the weekend visits occurred) and to work with her (when the evening visits occurred). Randall testified he provided food, diapers, and other support for Hanna and Janet, also without respondent's knowledge.

In late March or early April 1991, Janet left Rick, taking Hanna

with her. A verified petition for dissolution of marriage was filed April 16, 1991. The petition alleged that although Hanna was born during the marriage she was not Rick's biological or adopted child. No response or answer to the petition was filed. At the grounds hearing on June 24, 1991, there was no testimony or mention of Hanna; neither did the bifurcated judgment of dissolution mention Hanna.

The parties appeared in court January 28, 1992, to present their agreement on ancillary matters. In questioning from the court both parties responded they had read the proposed supplemental judgment, understood it, and that it accurately reflected their agreement. The agreement was entered as a written order titled "Supplementary Judgment of Dissolution." It directed that "as a bond exists between" Rick and Hanna, Rick was to have visitation with Hanna on the third weekend of each month, from 9 a.m. Saturday until 7 p.m. Sunday, and five consecutive days each year. The parties agreed to use their best efforts to foster the respect, love, and affection of Hanna toward each other. The agreed order stated that as Janet had not requested or stated grounds for an award of child support, no such award was made.

On September 23, 1992, Rick filed a petition for rule to show cause why Janet should not be held in contempt, alleging Janet had refused to allow visitation between himself and Hanna since May 1992. In response, Janet filed a petition to vacate the visitation order alleging it was void because the court lacked subject-matter jurisdiction to enter the order and lacked personal jurisdiction over Hanna. Janet's petition also argued the visitation order was not a final order and was unenforceable since the court there made no finding that a parent and child relationship existed between Rick and Hanna, and no decision as to custody was made or reserved by the court. Janet also filed a petition to abate visitation. At a hearing on these filings held January 25, 1993, the trial court found there was no final order with respect to Hanna and that a determination with respect to her paternity was necessary. At this point we note that the child was almost four years old on January 25, 1993; that actions to declare the nonexistence of a parent/child relationship are barred two years after there is knowledge of relevant facts (Ill. Rev. Stat. 1989, ch. 40, pars. 2508(a)(2), (a)(3)); and that it is a mistake to order blood tests where paternity or nonpaternity can no longer be disputed. *In re Marriage of O'Brien* (1993), 247 Ill. App. 3d 745, 749-50, 617 N.E.2d 873, 875-76.

Hearings were held March 23, 1993, in three separate actions involving Hanna. In the case at bar, No. 91—C—548, the court heard

testimony from Janet and Randall, and received, without objection, blood test results on Hanna, Randall, and Janet. Rick was not tested. Based on the test results the court found Hanna was not Rick's biological child, but Randall's. Janet then made an oral motion to vacate the visitation order, but that motion was denied. Janet was given leave to file a petition for modification of the visitation order, but has not done so. An adoption action, No. 92—A—11, brought by Janet and Randall, was voluntarily dismissed.

The court then took up case No. 92—L—1625, with Hanna as petitioner by Janet as her next of friend and mother, and Randall as defendant appearing personally. Rick, originally named as a defendant in that case, was never served and was dismissed. Randall filed an answer admitting he was the biological father of Hanna. The court found Randall was the biological father of Hanna, ordered the birth certificate amended, and ordered Hanna's last name changed from Hickenbottom to Allen.

On September 29, 1993, an evidentiary hearing was held on the September 1992 rule to show cause. Both parties, Rick's mother, Randall, and Hanna's day-care provider testified at the hearing. Janet maintained she was ready and willing to comply with the visitation order, but was unable to do so because Randall had forbidden her to allow visitation between Rick and Hanna. Janet testified visitation had occurred pursuant to the visitation order through April 26, 1992. Rick testified Janet told him in a phone conversation on July 24, 1992, that she would not allow any further visitation, and sent her attorney a fax to the same effect. The trial court found Janet had the ability to comply with the visitation order if she chose to do so and found Janet to be in contempt.

●1 On appeal, Janet challenges the underlying visitation order, claiming it was a void order and cannot be the basis for contempt for noncompliance. A judgment is void when entered by a court without jurisdiction of the parties or the subject matter. A void judgment may be attacked at any time, directly or collaterally. (*In re Marriage of Fox* (1989), 191 Ill. App. 3d 514, 520, 548 N.E.2d 71, 74.) Subject-matter jurisdiction is the power of a particular court to hear the type of case then before it. (*In re Marriage of Duffey* (1988), 168 Ill. App. 3d 1086, 1088, 523 N.E.2d 371, 373.) Janet's argument is mistaken in this case.

Jurisdiction over a cause depends on the state of facts at the time the action is brought. (*Duffey*, 168 Ill. App. 3d at 1088, 523 N.E.2d at 373.) When this action was brought in April 1991, there existed a legal presumption that Hanna was a child of the parties, since she was conceived and born during their marriage. (750 ILCS 45/5(a)(1)

(West 1992).) That presumption was not subject to attack in any action, except an action brought on behalf of Hanna, since more than two years had passed since her birth. (750 ILCS 45/8 (West 1992).) Therefore, the trial court indisputably had jurisdiction to enter the visitation order agreed to by the parties as part of the supplemental judgment. Assuming, for purposes of Janet's argument, that a court in a dissolution of marriage case has no power to order visitation other than in favor of the child's parents, the court still had power to order that Rick have visitation here. Janet's argument entirely ignores the presumption of paternity provided by the Illinois Parentage Act of 1984 (Act) (750 ILCS 45/5 (West 1992)). The provisions of the Act apply to all cases to determine paternity, whether brought under that statute or not. (750 ILCS 45/9 (West 1992).) An allegation made in a dissolution action after the limitations period has run is not sufficient to overcome that presumption.

•2 Janet next argues the visitation order is void since the trial court lacked personal jurisdiction over Randall. She notes a court does not have jurisdiction to enter a decree, order, or judgment which affects a right or interest of a person who is not a party to the action. (*Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 624, 387 N.E.2d 946, 950.) She contends the visitation order affected Randall's rights as a parent of Hanna. When the agreed order was entered, however, Randall was not legally considered to be Hanna's parent. There was no relationship between them in the law. Randall was therefore not a necessary party, since he had no legal rights affected by the visitation order. At the time the supplemental judgment was entered, 2 years and 11 months had passed since Hanna's birth. This was 11 months after the time Randall was barred from bringing any action to establish a parent and child relationship between himself and Hanna. 750 ILCS 45/8 (West 1992).

•3 Janet further contends if the visitation order was not void from the beginning, it became void when the trial court made paternity findings at the hearing on March 23, 1993. Janet cites no cases supporting her view that the court's March 23 findings would automatically void the existing order. She states that when the trial court found Randall to be Hanna's biological father future decisions regarding Rick's visitation with Hanna were to be made by the court, but she does not explain why this would make the prior order void. Personal jurisdiction over the father and former husband is not necessary with regard to orders establishing or modifying custody. (*In re Marriage of Mobley* (1991), 210 Ill. App. 3d 936, 937-38, 569 N.E.2d 323, 324.) *Mobley* was based on and is consistent with the Uniform Child Custody Jurisdiction Act. (750 ILCS 35/4 (West 1992).)

Certainly personal jurisdiction over a biological father is not required for continued validity of an existing visitation order. Visitation has been described as a form of custody. (*In re Custody of Myer* (1981), 100 Ill. App. 3d 27, 32, 426 N.E.2d 333, 336.) If a custody determination can be made without jurisdiction over a parent, so can a visitation determination.

We hold the agreed order providing visitation between respondent and Hanna was not void when entered, nor was it rendered void by any subsequent action of the trial court.

●4 Petitioner next argues the trial court's finding of contempt was an abuse of discretion. A determination of contempt will not be disturbed on review unless there has been an abuse of discretion. *People v. Buckley* (1987), 164 Ill. App. 3d 407, 412, 517 N.E.2d 1114, 1117; *In re Marriage of Page* (1987), 162 Ill. App. 3d 515, 518, 515 N.E.2d 1061, 1063.

At the evidentiary hearing on the rule to show cause petitioner said she was ready and willing to comply with the visitation order, but was unable to do so because Randall would not allow it. However, petitioner presented no evidence of what actions, if any, she took to try to comply; of any effort on her part to persuade Randall to allow her to comply with the order; or of any concrete actions or steps taken by Randall to prevent visitation, other than his recitation that he would not allow visitation to occur. Petitioner did not seek aid from the court against Randall to allow her to comply with the existing court order.

The trial judge's finding that Janet had the ability to cause visitation between Rick and Hanna to occur is not against the manifest weight of the evidence. The finding of contempt was not an abuse of discretion.

We close by noting that following oral argument, Rick advised the court of his present intention to abandon any further efforts to enforce his visitation rights. Nevertheless, the record evidence shows both Janet and Randall have demonstrated their unwillingness to look beyond their personal interests and protect the best interests of Hanna. The child has been manipulated and hurt by their ongoing efforts to shut her "daddy" out of her life. There was evidence Hanna was promised gifts not to see Rick and told he does not visit because he does not love her anymore. Janet has demonstrated utter disregard for the orders of the court. No further deviations or abuses should be tolerated. If Janet and Randall cannot put Hanna's interests above their own selfish interests, perhaps custody should be changed.

For the foregoing reasons, the judgment of the circuit court

finding Janet in contempt of court is affirmed and the cause remanded for further proceedings consistent with this opinion.

Affirmed.

KNECHT, J., concurs.

JUSTICE LUND, specially concurs:
The trial court's finding of contempt and resulting sanctions were justified. The conduct of the petitioner hardly indicated an interest in the welfare of the child. Time and again, when dealing with the problems of children, our courts find the moral breakdown of the family is a major cause. Here, after oral argument, respondent gave up his quest—because he believed in the best interest of the child. He is probably right, considering the turmoil related to our court.

On return to the trial court, I suggest the main concern now be for the child—not the justified sanction. Hopefully, the child will overcome this hideous period of her life.