*In re* MARRIAGE OF ROGER C. ADAMS, Petitioner-Appellee, and L. COLLEEN ADAMS, Respondent and Petitioner-Appellee (Timothy Arnold, Respondent-Appellant; Paul Robert Ziegler, Respondent).

Fourth District    No. 4—97—0418

Opinion filed June 18, 1998.

COOK, J., specially concurring.

Donald R. McClarey, of Strufe & McClarey, of Dwight, for appellant.

L. Colleen Adams, of Chenoa, appellee *pro se.*

C. Thomas Blakeman and Jennifer H. Bauknecht, both of Strong, Blakeman & Schrock, Ltd., of Pontiac, for appellee Roger C. Adams.

Thomas E. Herr, of Herr & Herr, of Pontiac, guardian *ad litem.*

JUSTICE KNECHT delivered the opinion of the court:

On April 26, 1996, petitioner Roger C. Adams filed a petition for dissolution of marriage in the circuit court of Livingston County. In his petition, Roger alleged he was not the father of the two children, A.A. and K.A., born during his marriage to respondent L. Colleen Adams (Colleen). On July 9, 1996, Colleen filed two petitions to establish paternity. One petition alleged Timothy Arnold was the biological father of A.A.; the second alleged Paul Robert Ziegler was the biological father of K.A. Ziegler agreed to provide financial support for K.A. and is not a party to this appeal. In October 1996, the trial court consolidated the cases.

After a hearing, the trial court found no parent and child relationship between A.A. and Roger. The trial court, however, found a parent and child relationship existed between Arnold and A.A. and ordered Arnold to provide financial support for A.A. Arnold appeals, arguing the trial court erred by (1) failing to find Roger was estopped from ceasing to act as A.A.'s father; (2) determining Colleen's petition and the later blood tests were proper as the orders were barred by the expiration of the limitations period; and (3) failing to find Roger should remain A.A.'s father because of A.A.'s wishes and best interests. We affirm.

## I. BACKGROUND

Roger and Colleen were married in October 1982. Roger had a vasectomy and was incapable of fathering children. Roger and Colleen

considered artificial insemination as a means to have children. Colleen later informed Roger she would be artificially inseminated. Colleen instead had an extramarital affair with Arnold, because she decided artificial insemination was too costly. A.A. was born on August 22, 1985.

Colleen told Roger A.A. was conceived through artificial insemination at Carle Clinic in Champaign, Illinois. She also informed Roger she paid the medical bills with a credit card. Roger testified he had no reason to believe Colleen lied about A.A.'s conception. Colleen became pregnant again in 1990. She gave birth to K.A. on October 10, 1990, as a result of an extramarital affair with Ziegler. Colleen also lied to Roger about K.A.'s conception.

Roger learned of one of Colleen's extramarital affairs in 1993 or 1994. He did not learn of the affairs with Ziegler and Arnold until December 1995. In March 1996, Colleen admitted to Roger A.A. was not conceived through artificial insemination but through an extramarital affair with Arnold. In April 1996, Roger filed a petition for the dissolution of his marriage, Livingston County case No. 96—D—73, in which he alleged he was not the father of A.A. and K.A. On July 9, 1996, Colleen filed petitions against Arnold and Ziegler to establish their paternity of A.A. and K.A., respectively, case Nos. 96—F—76 and 96—F—77.

Arnold filed a section 2—619 motion to dismiss (735 ILCS 5/2—619 (West 1996)), arguing the petition was barred because the relevant limitations period expired. The trial court concluded Colleen could bring the cause of action at that time and denied the motion. The causes were consolidated in October 1996.

On January 9, 1997, the trial court ordered Arnold, Colleen, and A.A. to submit to deoxyribonucleic acid (DNA) testing for the determination of inherited characteristics. The tests established a 99.99% probability Arnold was A.A.'s biological father. At a hearing on April 1, 1997, Arnold stipulated he was the biological father of A.A. The trial court concluded no parent-child relationship existed between Roger and A.A. and ordered Arnold to provide financial support for A.A. Arnold appeals.

## II. ESTOPPEL

Arnold argues Roger should have been estopped from claiming he was not A.A.'s father. Arnold states Roger had always known he was not A.A.'s biological father. Arnold apparently maintains the fact A.A. was not a product of artificial insemination is inconsequential, because Roger was A.A.'s father for 10 years despite knowing A.A. was not his biological son. Arnold cites *Cessna v. Montgomery*, 63 Ill. 2d 71, 344

N.E.2d 447 (1976), overruled on other grounds in *Dornfeld v. Julian*, 104 Ill. 2d 261, 267, 472 N.E.2d 431, 433 (1984), and *People ex rel. Andrews v. Andrews*, 94 Ill. App. 3d 84, 418 N.E.2d 470 (1981), and maintains "a man may not assume the role of father and then discard it at his whim."

■ Both *Cessna* and *Andrews* involve putative fathers who provided support for their children until after the then two-year limitations period for proving the existence of a parent-child relationship expired. *Cessna*, 63 Ill. 2d at 87, 344 N.E.2d at 454-55; *Andrews*, 94 Ill. App. 3d at 85, 418 N.E.2d at 471. The *Cessna* court held a defendant may be estopped from asserting the expiration of the two-year limitations period as a defense in a paternity suit. To determine whether estoppel applies, the trial court must determine whether the defendant's actions within the time period "significantly discouraged plaintiff from bringing suit until after the limitation period expired." *Cessna*, 63 Ill. 2d at 88, 344 N.E.2d at 455. The *Andrews* court, citing *Cessna*, held because the father's actions lulled the mother into believing a paternity suit was unnecessary, the father was estopped from using the limitations period's expiration as a defense. *Andrews*, 94 Ill. App. 3d at 85-86, 418 N.E.2d at 471.

■ This case is clearly distinguishable. Roger was not A.A.'s father, and his conduct did not prevent a timely filed paternity suit. Apparently, Arnold relies on these cases to show more generally that a defendant in a paternity suit may be estopped from asserting a lack of paternity based upon his conduct and to argue Roger should be estopped from asserting his lack of paternity. We disagree with Arnold's assertion Roger should be estopped from arguing his lack of parentage in the dissolution of marriage case. Arnold emphasizes Roger, knowing A.A. was not his biological child, raised him as his son for 10 years. Despite Arnold's apparent contentions the means of the conception of A.A. is inconsequential, we note there is a difference between artificial insemination and insemination by another man. In Illinois, when a man donates semen for artificial insemination of a woman not his wife, that man is treated as if he was not the biological father of the conceived child. 750 ILCS 40/3(a) (West 1994). A child born as a result of artificial insemination is considered the natural child of the husband and wife who requested and consented to the procedure. 750 ILCS 40/2 (West 1994). It is one thing to accept and raise a "fatherless" child that legally becomes the husband's own, and quite another to provide financial and emotional support to a child with a biological father capable of providing that support.

■ Roger believed Colleen, and the record does not establish he should have done otherwise prior to learning of the affairs in December

1995. Roger learned of the circumstances surrounding A.A.'s conception in early 1996. He petitioned for the dissolution of his marriage shortly after obtaining that knowledge. We find the trial court properly concluded Roger was not estopped from asserting his lack of paternity of A.A.

### III. LIMITATIONS PERIOD

Arnold also argues the trial court erred in denying his motion to dismiss and in later ordering blood tests because the limitations period expired, barring Colleen's petition. Arnold maintains although the petition sets out to establish the existence of a parent-child relationship, it also implicitly proves the "nonexistence" of a parent-child relationship between Roger and A.A. Arnold contends section 8(a)(3) of the Parentage Act of 1984 (Act) (750 ILCS 45/8(a)(3) (West 1996)) thus bars the petition. The trial court disagreed with Arnold's arguments. It found the applicable limitations period was that set forth in subsection (a)(1).

■ This court reviews rulings on section 2—619 motions to dismiss *de novo. Kemp-Golden v. Department of Children & Family Services,* 281 Ill. App. 3d 869, 879, 667 N.E.2d 688, 695 (1996). Section 8(a) of the Act provides the following, in relevant part:

"(a)(1) An action brought by or on behalf of a child *** shall be barred if brought later than 2 years after the child reaches the age of majority ***.

Except as otherwise provided in this Section, an action brought by a party alleging that he or she is the child's natural parent shall be barred if brought later than 2 years after the child reaches the age of majority. ***

(2) Failure to bring an action within 2 years shall not bar any party from asserting a defense in any action to declare the nonexistence of the parent and child relationship.

(3) An action to declare the *non-existence* of the parent and child relationship shall be barred if brought later than 2 years after the petitioner obtains knowledge of relevant facts." (Emphasis added.) 750 ILCS 45/8(a) (West 1996).

■ Section 8(a)(3) is inapplicable to these facts. Colleen filed an action to prove the *existence* of a parent and child relationship. Implicit in every petition to prove the existence of that relationship under section 8(a)(1) is proof of the *nonexistence* of the relationship to everyone else. Arnold's interpretation would thus subject all paternity petitions to the limitations period provided in section 8(a)(3), rendering the limitations period in section 8(a)(1) meaningless. Clearly, the legislature could not have intended such a result. The trial court did not err in finding the limitations period in section 8(a)(3) did not apply. Thus,

the trial court did not err in denying the motion to dismiss and in ordering the paternity test.

## IV. A.A.'S WISHES

■ Arnold next maintains the trial court erred in failing to act according to A.A.'s expressed wish to retain the parent and child relationship with Roger. Arnold also argues the best interests of A.A. require that Roger continue to support A.A. and act as his father. Arnold cites no authority to show a court has the authority to permit the wishes and best interests of a child to create a parent-child relationship where none legally exists. Arnold apparently treats this case as a decision between who would be the best father for A.A. Although the cases were consolidated, it is clear the court first addressed whether Roger was A.A.'s father. When it determined Roger was neither A.A.'s father nor responsible for his support, the trial court then considered the question of whether Arnold was A.A.'s father. The trial court's consideration of these cases appears consistent with section 7(b) of the Act, which provides once the presumption of fatherhood is rebutted, the paternity of another man may be established in the same case. 750 ILCS 45/7(b) (West 1994).

Affirmed.

GARMAN, P.J., concurs.

JUSTICE COOK, specially concurring:

The two-year statute of limitations on actions to declare the nonexistence of a parent and child relationship (750 ILCS 45/8(a)(3) (West 1996)) serves an important purpose. It is wrong to make a child a part of a family unit and pass over substantial concerns regarding the child's paternity only to raise them years later in an attempt to avoid child support. *In re Marriage of O'Brien*, 247 Ill. App. 3d 745, 750, 617 N.E.2d 873, 876 (1993). The two-year statute prevents such attempts.

It is somewhat surprising that Roger, who had developed a father-child relationship with A.A. over a 10-year period, would abandon that relationship because of his (legitimate) concern with the conduct of Colleen. Nevertheless, that is his right, if he brings his nonexistence of paternity action within "2 years after [he] obtains knowledge of relevant facts." 750 ILCS 45/8(a)(3) (West 1996). I agree that Roger lacked knowledge of "relevant facts" in this unusual case, even though he knew at all times that he was not the father of A.A. Even if it were possible to show Roger's earlier knowledge of those relevant facts, the guardian *ad litem* for the children has apparently concluded that it is

not worth doing so, and concluded that it is best that Roger be out of the picture.

I agree with Arnold that a mother cannot file a paternity action against one man as a device to establish the nonpaternity of the presumed father, but that is not the situation we have here. Before Colleen filed her paternity action against Arnold, Roger had already filed a nonexistence action, his petition for dissolution of marriage in which he denied paternity. It is true that the two-year statute of limitations for nonexistence of paternity should not be evaded by devices such as attempting to bring an existence action "on behalf of a child." 750 ILCS 45/8(a)(1) (West 1996). Courts have rejected the idea that an action that "[sought] to deprive the child of the only father he has known" could be considered brought on behalf of the child. *In re Marriage of Ingram*, 176 Ill. App. 3d 413, 418, 531 N.E.2d 97, 100 (1988); see *In re A.K.*, 250 Ill. App. 3d 981, 994-95, 620 N.E.2d 572, 581-82 (1993) (Cook, J., dissenting); see also 750 ILCS 45/7(b) (West 1996) (*after* presumptions of paternity rebutted, paternity of another may be shown in the same action). The paternity action against Arnold here did not seek to deprive A.A. of the only father he had known; Roger's actions in the dissolution case had already done that.

Arnold is not a proper party to an action questioning Roger's paternity. *In re Marriage of Allen*, 265 Ill. App. 3d 208, 212, 638 N.E.2d 340, 344 (1994). It may nevertheless be useful to allow Arnold to question whether the relationship between A.A. and Roger could be attacked. Someone should certainly address that issue. It is difficult, however, to give much weight to Arnold's argument when it is not based on concern for the welfare of A.A., but instead is made to advance Arnold's argument that he should not have to pay child support for A.A. The argument would be much more convincing if it were made by the guardian *ad litem*.