*In re* PARENTAGE OF RYAN M. GRIESMEYER, a Minor (Nathalie Griesmeyer, Petitioner-Appellee, v. Thomas LaRosa, Respondent (Brian S. Griesmeyer, Additional Party Respondent-Appellant)).

First District (5th Division)   No. 1—98—0905

Opinion filed December 18, 1998.

Deutsch, Levy & Engel, Chartered, of Chicago (Stuart Berks and James E. O'Halloran, of counsel), for appellant.

Mammas & Goldberg, Ltd., of Chicago (Jerry S. Goldberg, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Petitioner, Nathalie Griesmeyer, on behalf of her daughter Ryan M. Griesmeyer, a minor, filed a petition to establish the paternity of the child. She joined Brian Griesmeyer, her first husband, Ryan having been born during their marriage. She further joined her current husband, Thomas LaRosa.

The circuit court subsequently denied the section 2—619 motion to dismiss (735 ILCS 5/2—619 (West 1996)) filed by respondent Brian S. Griesmeyer. This court granted Brian's application to hear the appeal of the circuit's order pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).

The question of law presented in this interlocutory appeal, as stated in the circuit court's order of March 6, 1998, is "whether or not the fact that a minor child was represented by an attorney and guardian *ad litem* in an ultimately uncontested dissolution proceeding in which the wife had originally disputed the husband's paternity, precludes the relitigation of the issue of parentage in a subsequent action brought by the wife on behalf of said minor child."

We find that the parentage petition is barred by the judgment of dissolution, where a court-appointed guardian *ad litem* represented the minor during the dissolution proceedings. Accordingly, we reverse the circuit court's order denying Brian's motion to dismiss.

Nathalie and Brian were married in November 1991 and, during the course of their marriage, the minor was born in June 1992. In September 1994, dissolution of marriage proceedings commenced when Brian filed a petition for dissolution of marriage and Nathalie responded with a counterpetition for dissolution of marriage, in which she denied that Brian was the father of the minor. The trial court then appointed a guardian *ad litem* to represent the interests of the minor child. Eventually, in January 1996, the circuit court entered an uncontested judgment for dissolution of their marriage, which included the court's finding that the minor was "born as a result of this marriage."

On August 22, 1997, Nathalie filed a petition to establish father and child relationship, alleging that respondent Thomas LaRosa (LaRosa) was the biological father of the minor. By the time this petition was filed, Nathalie was married to LaRosa, who has never appeared, personally or by counsel, in any of the judicial proceedings either in the circuit court or during this appeal. In response, Brian filed a section 2—619 motion to dismiss, asserting that the doctrine of col-

lateral estoppel barred relitigation of the identity of the minor's natural father based on the findings set forth in the dissolution proceeding and the position taken therein by the minor through her attorney and guardian *ad litem*.

In his petition for dissolution of marriage, Brian stated that the minor was born of the marriage between himself and Nathalie. In both her answer to Brian's petition for dissolution of marriage and her counterpetition for dissolution of marriage, Nathalie denied that Brian was the biological father of the minor. In his response to Nathalie's counterpetition, Brian denied the allegation that he was not the biological father of the minor and further asserted that Nathalie was precluded from seeking a declaration of the nonexistence of the parent and child relationship because she had failed to make such a parentage claim within two years after the birth of the minor. By order dated September 19, 1994, the circuit court appointed the public guardian to represent the interests of the minor.

At a prove-up hearing on January 18, 1996,[1] Brian testified that one child was born of the marriage, *i.e.*, the minor. Nathalie testified that she heard the summary of the terms and conditions of the marital settlement agreement and the joint parenting order to which Brian testified. On the same date, the circuit court granted Brian's petition for dissolution of marriage and entered a judgment of dissolution, which incorporated a marital settlement agreement and a joint parenting agreement. The order also expressly discharged the office of the public guardian from any further obligations.

In its judgment for dissolution of marriage, the circuit court specifically found "[t]hat there was one child born as a result of this marriage; namely Ryan M. Griesmeyer, born June 18, 1992." The marital settlement agreement also stated that "there was one child born as a result of this marriage; namely RYAN M. GRIESMEYER, age 3 years, born June 18, 1992."

The marital settlement agreement provided that the spouses, Nathalie and Brian, agreed that each is a fit and proper person to have custody of the minor and that joint custody would be in the best interests of the minor. Furthermore, Brian was obligated to pay child support twice a month; maintain adequate hospitalization insurance for the minor; pay 50% of all ordinary medical expenses not covered by insurance; pay any amount deemed to be extraordinary expenses incurred for medical, doctor, hospital, surgical, dental, psychiatric and psychological care; contribute toward the college education of the

---

[1]The record in the present appeal contains only an eight-page excerpt from the transcript of the January 18, 1996, hearing.

minor; maintain all existing life insurance policies on his life with the minor as irrevocable beneficiary during the designated time period; and pay one-half for the minor's day care costs and for the minor's attendance at a parochial or other private school, if such attendance is decided.

The spouses further agreed that their joint custody of the minor would accord with the "joint parenting agreement/order," which was a nine-page attachment providing, *inter alia*, that the minor would reside primarily with Nathalie and Brian would have the specified visitation schedule. The joint parenting agreement further provided that the minor "shall continue to use the name: RYAN M. GRIESMEYER and the Mother shall not, for any reason or purpose including her possible remarriage, cause or permit the child to use or be designated by any other name."

More than 1½ years later, on August 22, 1997, Nathalie filed a petition to establish father and child relationship, seeking to declare LaRosa the biological father of the minor. On September 16, 1997, Brian filed a motion to dismiss Nathalie's petition. To this motion, Brian attached his affidavit in which he attested that he had consistently and regularly paid every child support payment directed in the judgment for dissolution of marriage and had consistently and regularly exercised all visitation with the minor as provided in the judgment. Brian noted that the minor was represented throughout the course of the dissolution of marriage proceeding by her own attorney and public guardian. Brian maintained that the position taken by the minor through her attorney and guardian during the dissolution proceedings and the findings set forth in the dissolution judgment bar relitigation of the identity of the minor's natural father under the doctrine of collateral estoppel.

On November 12, 1997, Nathalie filed a response to Brian's motion to dismiss, asserting that the doctrines of collateral estoppel and *res judicata* do not apply because the minor was neither in privity with Nathalie and Brian nor a party to the dissolution of marriage action. Nathalie maintained that the minor has an unqualified statutory entitlement to determine the identity of her biological father under the Illinois Parentage Act of 1984 (Act) (750 ILCS 45/1 *et seq.* (West 1996)).

On January 20, 1998, the circuit court entered a memorandum opinion and order, denying Brian's motion to dismiss. The circuit court concluded that the minor is not barred by the resolution of the paternity issue in the prior dissolution proceeding. In addition, the circuit court appointed Joy Feinberg as attorney and guardian *ad litem* for the minor with the specific duty to recommend through a

report or appropriate pleading filed with the court whether it is in the minor's best interest that this parentage action proceed. Thereafter, on March 6, 1998, the circuit court granted Brian's motion for leave to appeal its interlocutory order. This court then granted leave to appeal pursuant to Rule 308.

■ Our review of a ruling on a section 2—619 motion to dismiss is *de novo*. *In re Paternity of Rogers*, 297 Ill. App. 3d 750, 754 (1998). In considering a section 2—619 motion, we accept all well-pleaded facts and the reasonable inferences drawn from those facts as true, and also consider the pleadings, affidavits, and depositions. *Paternity of Rogers*, 297 Ill. App. 3d at 754. Our inquiry on review, absent an issue of material fact, is whether the dismissal was proper as a matter of law. *Paternity of Rogers*, 297 Ill. App. 3d at 754. The legal question before us in the present appeal raises an issue of first impression.

Brian asserts that the instant parentage action is barred by the doctrines of *res judicata* and collateral estoppel based on the prior judgment for dissolution of marriage because the minor was represented by a guardian *ad litem* during the dissolution proceedings. On the other hand, Nathalie contends that the mere appointment of a guardian *ad litem* does not trigger the preclusive doctrines to bind the minor to the findings in the dissolution judgment and does not bar the minor of her fundamental, statutory right to determine a parent-child relationship under the Act.

The Illinois Supreme Court addressed the effect of a prior dissolution judgment on a subsequent paternity action in *Simcox v. Simcox*, 131 Ill. 2d 491 (1989). In *Simcox*, the mother (Deborah) and the defendant (Christopher) were married at the time the minor plaintiff was born and their subsequent dissolution judgment provided that the minor child was "born to the parties during their marriage." *Simcox*, 131 Ill. 2d at 495. Thereafter, the mother married Jeffrey and filed a paternity action, on behalf of the minor child, seeking to determine the nonexistence of a parent-child relationship between the minor and the defendant, and the existence of a father-child relationship between the minor and Jeffrey. *Simcox*, 131 Ill. 2d at 493. The defendant filed a section 2—619 motion to dismiss, contending that the judicial finding of paternity in the uncontested judgment of dissolution of marriage of the mother and the defendant barred the later paternity action under the doctrines of collateral estoppel and *res judicata*. *Simcox*, 131 Ill. 2d at 494. The supreme court disagreed with the defendant and held that the dissolution judgment did not constitute a bar to the paternity action filed by the minor child because he was not a party or privy to the dissolution proceedings. *Simcox*, 131 Ill. 2d at 497.

As explained in *Simcox*, "[t]he doctrine of collateral estoppel

provides that an issue which has been addressed by a court of competent jurisdiction cannot be relitigated in a later action between the same parties or their privies in the same or a different cause of action." *Simcox*, 131 Ill. 2d at 496. After noting that the minor child was not a party to the dissolution proceedings, the *Simcox* court held "that children are *not* privies of their parents in dissolution proceedings and, as such, are not bound by findings of paternity in such proceedings unless they are parties to the proceedings." (Emphasis in original.) *Simcox*, 131 Ill. 2d at 497. Thus, collateral estoppel did not bar the minor child from bringing the paternity action. *Simcox*, 131 Ill. 2d at 497.

Similarly, the *Simcox* court explained that the doctrine of *res judicata* bars any subsequent actions between the same parties or their privies on the same cause of action where a final judgment on the merits has been rendered by a court of competent jurisdiction. *Simcox*, 131 Ill. 2d at 497. Since the minor child was neither a party to the prior dissolution proceedings nor a privy of her parents, the *Simcox* court held that her subsequent paternity action was not barred by the doctrine of *res judicata*. *Simcox*, 131 Ill. 2d at 497.

In a specially concurring opinion in *Simcox*, Justice Ryan wrote, in full, as follows:

> "I concur with the holding of the opinion filed in this case. I point out, however, that pursuant to section 506 of the Illinois Marriage and Dissolution of Marriage Act [citation], in dissolution cases the court may appoint an attorney to represent the interests of a minor, or a guardian *ad litem* for the child. It appears that no such attorney or guardian *ad litem* was appointed in this case. By my concurrence I do not intend to convey the impression that I would have favored a similar holding had an attorney or guardian *ad litem* been appointed for the child in this dissolution proceeding. Such a case, in my mind, would have presented a different question, the resolution of which must be reserved for another day."

*Simcox*, 131 Ill. 2d at 499 (Ryan, J., specially concurring). The day to which Justice Ryan referred is now here. Unlike the *Simcox* case, the court in the dissolution proceedings of Nathalie and Brian indeed appointed the public guardian to represent the interests of the minor. The progeny of *Simcox* have commented upon, although not answered, the question reserved by Justice Ryan.

The only notable remark that directly contravenes the position taken in the *Simcox* special concurrence appears in *In re A.K.*, 250 Ill. App. 3d 981 (1993) (the dismissal of a former husband from a juvenile proceeding instituted by a great-grandmother alleging abuse of the child was not reversible error). In *A.K.*, the fourth district commented

that the majority opinion in *Simcox*, in contrast to the special concurrence, did not mention that the appointment of a guardian *ad litem* in dissolution proceedings would make a difference in a subsequent parentage action by a child. *A.K.*, 250 Ill. App. 3d at 984. One justice in *A.K.*, however, disagreed with the majority's comment and affirmatively stated that the child (A.K.) "was a party to the dissolution action here, because A.K. was represented by a guardian *ad litem.*" *A.K.*, 250 Ill. App. 3d at 993 (Cook, J., dissenting).

The fifth district expressly agreed with the special concurrence in *Simcox* and held that the minor child's subsequent parentage petition was not barred by *res judicata* and collateral estoppel where a guardian *ad litem* had not been appointed in the prior dissolution proceeding. *In re Rodgers*, 279 Ill. App. 3d 648, 654 (1996). The court noted the special concurrence in *Simcox* and stated, "[l]ikewise, we believe that had a guardian *ad litem* been appointed in the instant case, the outcome might have been different." *Rodgers*, 279 Ill. App. 3d at 654.

Other decisions that have not barred parentage or paternity actions based on prior judgments include *In re Parentage of Mayberry*, 222 Ill. App. 3d 1008 (1991), and *Department of Public Aid ex rel. Skelton v. Liesman*, 218 Ill. App. 3d 437 (1991). In *Mayberry*, the second district held that a minor child's parentage action was not barred by the unwed mother and the putative father's prior cash settlement, which resulted in the dismissal of the mother's paternity action against the putative father. In *Mayberry*, the "settlement was made without an acknowledgement of paternity" (*Mayberry*, 222 Ill. App. 3d at 1009) and no monies were allocated or set aside for the minor (*Mayberry*, 222 Ill. App. 3d at 1010). Under these circumstances, the court found that "the minor was neither a party to the prior action nor were her interests adequately represented." *Mayberry*, 222 Ill. App. 3d at 1010. The court noted the lack of any representation of the minor in the settlement between the mother and the putative father: "[T]here is no indication that [the minor's] interests were represented in the earlier settlement. *** Here, [the minor's] interests are only represented by implication, *i.e.*, the court merely mentions that the settlement was in [the minor's] best interest, but she was neither a party to the agreement nor in her own proper person by a guardian, nor by a guardian *ad litem.*" *Mayberry*, 222 Ill. App. 3d at 1010-11.

In *Liesman*, the fourth district held that the doctrine of *res judicata* did not bar the Illinois Department of Public Aid (the Department) from bringing a parentage action on behalf of the minor against the putative father. The earlier proceeding that allegedly operated as a bar was a parentage action brought by the mother with the Depart-

ment, which was eventually dismissed with prejudice as a sanction for the mother's failure to comply with discovery. *Liesman*, 218 Ill. App. 3d at 439. The court particularly noted that, in the earlier proceeding, the putative father did not request joinder of the minor or "request appointment of a guardian *ad litem*." *Liesman*, 218 Ill. App. 3d at 440.

Preclusive doctrines have been applied to bar subsequent actions in *In re Marriage of Klebs*, 196 Ill. App. 3d 472 (1990), *Paternity of Rogers*, 297 Ill. App. 3d 750 (1998), and *Draper v. Truitt*, 250 Ill. App. 3d 654 (1993). In *Klebs*, the first district held that a prior judgment for dissolution of marriage, which stated that the child had been born to the marriage between John and Becki, barred the mother (Becki) from bringing a subsequent cause of action to vacate the portions of the dissolution judgment establishing that the child was born to the marriage. *Klebs*, 196 Ill. App. 3d at 479. The mother was barred from raising the issue of the child's parentage by the finding of paternity in the dissolution decree, notwithstanding that the biological father of the child definitively was determined to be the mother's then current husband, James Klebs. The court acknowledged that the Act would not bar an action by or on behalf of the child, but in the appeal before it, "no guardian *ad litem* was appointed to represent" the child. *Klebs*, 196 Ill. App. 3d at 483.

In *Rogers*, the second district held that a former husband was bound by a prior dissolution judgment and, thus, his parentage petition was barred on the grounds of *res judicata* and collateral estoppel. The *Rogers* court further stated that "[w]e hasten to add, however, that we do not decide here whether the child is precluded from relitigating the issue of his parentage." *Rogers*, 297 Ill. App. 3d at 755.

In *Draper*, the first district held that an unwed mother's second petition seeking a paternity determination against the same defendant was barred by the doctrine of *res judicata* where the first paternity action was adjudicated on the merits in a bench trial and found that the named defendant was not the father. The *Draper* court found the *Simcox* decision to be distinguishable because *Simcox* involved an uncontested dissolution proceeding where two prospective fathers were arguing over who was the father and there was no adjudication of paternity. *Draper*, 250 Ill. App. 3d at 658. Although it did not mention Justice Ryan's special concurrence in *Simcox*, the *Draper* court held that "the child's interests were adequately represented in the first action," which the mother had initiated by filing a complaint through the Illinois Attorney General's office. *Draper*, 250 Ill. App. 3d at 659.

Subsequently, the fourth district, in a decision authored by Justice Cook, questioned the soundness of the *Draper* decision on the basis

that it seemed "to abandon the requirement of privity in cases where the issues [were] fully litigated." *In re Marriage of Mesecher*, 272 Ill. App. 3d 73, 78 (1995). The facts of the *Mesecher* case, however, are significantly different than the previously discussed cases. The underlying problem in *Mesecher* was the failure of the father to pay child support. When the father did not meet his financial obligations, the mother sought and received public aid assistance. By accepting public aid, the mother assigned to the Department her rights to child support up to the amount provided by the Department. The Department eventually initiated collection proceedings against the father and obtained a court order for a specified amount of money against the father. Most notably, the mother "was not represented by counsel at" the Department proceedings and the court order obtained by the Department only covered arrearages accruing after the mother had begun to receive public aid. *Mesecher*, 272 Ill. App. 3d at 75-76. The order at issue in the *Mesecher* decision was an order later obtained by the mother against the father for arrearages owed to her, not the Department. The *Mesecher* court rejected the father's argument that the order secured by the Department should bar the order obtained by the mother. The *Mesecher* court found that the Department and the mother were not privies and suggested that "[p]erhaps the solution for child support payors is to make sure that both the recipient and the [Department] are parties in each proceeding." *Mesecher*, 272 Ill. App. 3d at 78. Justice Cook's majority position in *Mesecher* is completely consistent with his dissent in *A.K.*, *i.e.*, legal representation of a person invokes status as a party or privity, whether it be counsel for a mother in the Department proceedings in *Mesecher* or counsel for a minor in the dissolution proceedings in *A.K.*.

■ By statute, a court in a dissolution proceeding may appoint an attorney as guardian *ad litem* to represent the interests of a minor child. 750 ILCS 5/506 (West 1994). "Where a trial court has notice that a minor's interests are not properly represented, it is the duty of the trial court to appoint a guardian *ad litem* to safeguard and protect those interests." *Majidi v. Palmer*, 175 Ill. App. 3d 679, 685 (1988) (where the putative father's complaint for a declaratory judgment for parentage was properly dismissed, the court remanded the matter for the appointment of a guardian *ad litem*, who was ordered "to file a petition to determine paternity if she finds that such action is in the best interests of the child").

"[T]he appointment of a guardian ad litem is not a mere formality." *Rom v. Gephart*, 30 Ill. App. 2d 199, 208 (1961), citing *McCarthy v. Cain*, 301 Ill. 534 (1922). As the representative of a minor, the guardian *ad litem* is a party to the action. *In re Marriage of Apperson*,

215 Ill. App. 3d 378, 385 (1991) (a guardian *ad litem* represented the two minors in a proceeding instituted by their divorced parents, who each filed separate petitions to modify the joint custody order and obtain sole custody of the minors).

The duty of a guardian *ad litem* is "to call the rights of the minor to the attention of the court, to present their interests and claim for them such protection as under the law they are entitled." *Rom*, 30 Ill. App. 2d at 208. The imperative and guiding principal by which a guardian *ad litem* operates is to act in the best interests of the minor. Most particularly for purposes of the present appeal, "a paternity determination turns on the best interests of the child." *In re Custody of D.A.,* 201 Ill. App. 3d 810, 823 (1990). A paternity determination is not *always* in the best interests of the child. Such decision necessarily must rest on myriad factors that cannot be encompassed in one *per se* rule of law, but instead must be decided on a case-by-case basis. See *Custody of D.A.*, 201 Ill. App. 3d at 822-23 (a guardian *ad litem* need not bring a paternity action where such action would not be in the minor's best interests); see also *In re Marriage of Koenig*, 211 Ill. App. 3d 1045, 1051 (1991) (the failure of counsel for a minor to involve the minor in the mother's paternity petition "could well have been construed by the circuit court as acting in the child's best interests"). Moreover, while courts recognize that "one's background, heritage, and heredity [are] important to one's identity, [they] do[ ] not fall within any heretofore delineated zone of privacy implicitly protected within the Bill of Rights." *In re Roger B.*, 84 Ill. 2d 323, 329 (1981) (an adoptee does not have a fundamental right to examine his adoption records).

Most recently, *In re Marriage of Adams*, 297 Ill. App. 3d 156 (1998), a husband (Roger) filed a petition for dissolution of marriage, alleging that he was not the father of the two children born during his marriage to his wife (Colleen). Colleen filed petitions against two other men (Arnold and Ziegler), alleging that they were the respective fathers of the two children. One father (Ziegler) agreed to provide financial support to his one child and, thus, was not a party to the appeal. As to the second child, the trial court concluded that husband Roger was not the father of the child and Arnold stipulated that he was the biological father of the child. Arnold appealed, arguing that Roger was estopped from ceasing to act as the child's father. The fourth district held that husband Roger was not estopped from asserting his lack of paternity as to the child. *Adams*, 297 Ill. App. 3d at 160. In a special concurrence, Justice Cook noted that husband Roger's denial of paternity in the dissolution case was "somewhat surprising" because he had developed a father-child relationship with the child for

over 10 years. *Adams*, 297 Ill. App. 3d at 161 (Cook, J., specially concurring). Justice Cook further observed that, notwithstanding this 10-year relationship and the possibility that Roger should have brought his nonexistence of paternity action sooner, "the guardian *ad litem* for the children has apparently concluded that it is not worth doing so, and concluded that it is best that Roger be out of the picture." *Adams*, 297 Ill. App. 3d at 161-62 (Cook, J., specially concurring).

■ In the underlying dissolution proceeding, the paternity of the minor clearly was raised in the petitions and responses filed by Brian and Nathalie in 1994. The circuit court immediately ordered the appointment of a guardian *ad litem* to represent the minor. More than one year later (September 1994 to January 1996), Nathalie and Brian entered into a marital settlement agreement and a joint parenting agreement, which was incorporated into the uncontested judgment of dissolution. The court order also discharged the public guardian from any further obligations. In the judgment of dissolution, the circuit court found that the minor was "born as a result of this marriage." Thus, the issue of the minor's paternity began as a dispute, continued through the legal process with the minor represented by a guardian *ad litem*, and ended as an uncontested judicial finding. Under these circumstances, to exclude the minor as a nonparty or nonprivy of the dissolution judgment where the minor was represented by a court-appointed guardian *ad litem* renders such legal representation a nullity.

■ We believe that the relitigation of the minor's paternity in this parentage petition is barred by the prior, uncontested judgment of dissolution where the minor was represented by a guardian *ad litem* during the dispute over the minor's paternity. Although no Illinois court has addressed this factual setting, the Missouri Court of Appeals faced the identical scenario and held that the mother and daughter were collaterally estopped from relitigating the paternity issue where, during the prior dissolution proceedings, the paternity of the minor was contested and the trial court had appointed a guardian *ad litem* for the minor. *Missouri ex rel. Miller v. Miller*, 859 S.W.2d 153, 154 (Mo. Ct. App. 1993). The Missouri court found:

> "The [trial] court determined the paternity issue in the divorce action. Although [the minor] was not a party, the court-appointed guardian at litem [*sic*] was present at the dissolution hearing and represented [the minor's] interest. When a child's interest is represented by a guardian at litem [*sic*] at a prior proceeding, collateral estoppel bars a child from relitigating the paternity issue." *Miller*, 859 S.W.2d at 154.

We agree with this holding and believe that the case law of Illinois, from the special concurrence in *Simcox* through its progeny, supports such a holding. Accordingly, we reverse the circuit court's order denying Brian's motion to dismiss.

Reversed and remanded.

HARTMAN and THEIS, JJ., concur.