FIRST DIVISION

No. 1-09-3468

| | |
|---|---|
| *In re* M.M., a Minor, | ) |
| | )   Appeal from the |
|     Respondent-Appellee | )   Circuit Court of |
| | )   Cook County |
| (The People of the State of Illinois, | ) |
| | ) |
|     Petitioner-Appellee, | )   No. 09 JA 604 |
| | ) |
| v. | ) |
| | )   The Honorable |
| Robert M., | )   Helaine L. Berger, |
| | )   Judge Presiding. |
|     Respondent-Appellant). | ) |

JUSTICE LAMPKIN delivered the opinion of the court:

Respondent, Robert M., appeals the trial court's order entering a finding of nonpaternity of the minor, M.M., pursuant to deoxyribonucleic acid (DNA) testing. Robert M. contends the trial court's finding was erroneous where he and the minor's mother, Shante M., executed a voluntary acknowledgment of paternity (VAP) and he signed the minor's birth certificate as the father. Based on the following, we affirm.

FACTS

M.M. was born to Shante M. on February 8, 2009. At all relevant times, Shante M. has been a ward of the court herself and will remain as such until her twenty-first birthday on July 16, 2010.

1-09-3468

The case began when the Department of Children and Family Services (DCFS) received a hotline call alleging M.M. was at risk of harm and sexual abuse based on an incident of domestic violence between Shante M. and Robert M., a registered sex offender living with Shante M., that occurred while M.M. was present. Timothy Otunde, a division of child protection investigator, was assigned to investigate the allegation. Based on Otunde's investigation, M.M. was taken into custody on July 27, 2009. On July 28, 2009, the State filed a petition for the adjudication of wardship of M.M.[1] based on allegations that the minor was abused or neglected pursuant to section 2-3(2)(ii) of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/2-3(2)(ii) (West 2008)). A temporary custody hearing was held on that date.

Preliminary testimony and admonishments were made. Shante M. testified that Robert M. is M.M.'s biological father and that his name appears on the minor's birth certificate. Robert M. also testified that he is the biological father of M.M.; however, he requested a paternity test. The trial court granted the request over the State's objection. The parties initially

[1]The petition was also filed for the adjudication of wardship of Shante M.'s older child, M.W. M.W.'s case is not relevant to the instant appeal.

-2-

expressed their intention to proceed by way of stipulation, but both Shante M. and Robert M. requested a full hearing.

Otunde testified that he began his investigation in late May 2009. He learned that Shante M., Robert M., and M.M. lived together and that Robert M. was a registered sex offender, had a DCFS indicated sexual abuse report[2], and was convicted of sexually abusing a three-year-old. The initial name and address given for Shante M. were incorrect and Otunde did not learn her correct name and address until July 7. Otunde discovered Shante M. was a DCFS ward and contacted Shante M.'s caseworker, Patricia Brown. Brown said Shante M. had not been cooperating with the offered UCAN services, which is a teen parenting program. Brown added that Shante M. was living in an unapproved self-selected placement. Later, Brown informed Otunde that Shante M. had been offered parenting classes and counseling, but she refused both. Shante M., however, did complete her GED and began beauty school.

Otunde went to Shante M. and Robert M.'s apartment several times in an attempt to speak with them. On his first attempt, a neighbor told Otunde that the couple lived in the basement, but Robert M. had been arrested and was in jail. Otunde later

[2]According to Otunde, "indicated" is a DCFS term meaning that an investigation has shown the person committed the alleged act.

learned Robert M. had been arrested for domestic battery and was in jail for approximately one week. Shante M. was the victim of the domestic battery charge. She allegedly suffered burn injuries and was taken to the University of Chicago hospital. The case, however, was dismissed. Otunde also discovered a second domestic battery arrest that was never prosecuted. Otunde left notes at the apartment with his contact information. On July 15, Robert M. called Otunde. Otunde and Robert M. arranged a meeting with the family the following day at their apartment. When Otunde arrived at the designated time, no one answered the door. Robert M. called Otunde on July 17 to arrange another meeting.

Otunde finally met with Shante M. at the apartment during the morning of July 21, 2009. Robert M. was not present; however, he and Shante M. spoke on the telephone several times while Otunde was there. Otunde informed Shante M. that he was investigating an allegation of possible abuse and neglect. Shante M. told Otunde she knew Robert M. was a registered sex offender; however, she said Robert M. had never harmed M.M. Shante M. told Otunde that she and Robert M. had been together for three years. Shante M. admitted she and Robert M. argue, but denied that they had physical altercations. Otunde informed Shante M. that, due to Robert M.'s background, either she and the

children had to move out of the home, Robert M. had to move out, or the children had to move out. Otunde told Shante M. that she could enter the Safe Family Program, but she refused. She later agreed to place M.M. in the program.

Otunde testified that he met with Robert M. at the apartment later in the evening on July 21, 2009. Otunde explained that, due to Robert M.'s registered offender status, indicated DCFS report, and conviction, he was not supposed to be around children. Otunde added that the only way Robert M. could be around children was if he entered treatment and a therapist provided safety clearance on his behalf. Robert M. responded that he did not believe any therapist would be willing to provide the requisite clearance even though he had been out of jail for many years and had not reoffended. Robert M. said he had received treatment from Doctor Harris at an agency called Emages.

Otunde called Dr. Harris on July 21, 2009. Dr. Harris said Robert M. was in treatment "a few years back." Robert M. did not complete the treatment; instead, once he was released from parole, he no longer attended treatment. Dr. Harris could not give a recommendation as to Robert M.'s ability to reoffend.

According to Otunde, Shante M. did place M.M. in the Safe Family Program on July 22 or 23. Otunde testified, however, that he took M.M. into protective custody on July 27 because the Safe

Family Program was only a two-month solution, at best, and Shante M. could remove the minor at any time.

Shante M. testified that she elected to enroll at UCAN at the end of August 2008 when she had one child and was pregnant with M.M. Shante M. said she left UCAN around May 15, 2009, and moved back in with Robert M. Shante M. disputed telling Otunde that she lived with Robert M. for three years. However, she said she occasionally left UCAN during the period of August 2008 and May 2009 to stay with Robert M. Shante M. added that she stayed with Robert M. from "time to time" before she entered UCAN. Shante M. admitted she was supposed to attend parenting training and classes at UCAN. She said class enrollment was full while she was there. Shante M. said she attended therapy while at UCAN, but ceased attending when she left the facility.

Shante M. testified that she knew Robert M. had been convicted of sexual abuse and was a registered sex offender. She was aware that the victim was a minor, but denied knowing the victim was three years old. Shante M. said she never left M.M. alone with Robert M.

Shante M. admitted she was the complaining witness for Robert M.'s domestic battery charge on June 28, 2009; however, she chose to drop the charges. Shante M. said the incident was "actually an accident" in that Robert M. tripped over her curling

iron and she was burned on her arm as a result. Shante M. testified that M.M. was not present during the incident. Shante M. admitted the couple had a prior domestic battery incident in which she was arrested and Robert M. was the complaining witness.

Shante M. further admitted that she was indicated for lack of supervision of M.M. in March 2009; however, she said the case was "unfounded." Shante M. also was indicated for risk of harm to her older child in 2008.

Shante M. testified that she was familiar with and fond of the Safe Family Program, which she had used on prior occasions. Specifically, prior to giving birth to M.M., Shante M. placed her older child in the program from approximately January to March 2009. Shante M. then placed M.M. in the program around May 31, 2009, for approximately four to five weeks when Shante M. began beauty school. At the time, she did not have M.M.'s birth certificate or social security number and therefore could not place M.M. in daycare. According to Shante M., she never placed M.M. in the Safe Family Program due to concern about Robert M. After her meeting with Otunde, Shante M. agreed to enroll her children in the Safe Family Program with the understanding that they would remain for two or three months while she moved out of the apartment and got settled.

Robert M. testified that he was convicted of the sex offense

16 years ago when he was 18 years old. He admitted the victim was three years old. Robert M. served almost 9 years of an 18-year prison term. He was released in early 2002. Robert M. said he was on parole for two years. One condition of his parole was to attend sex offender therapy, which he did "off and on" for two years with Dr. Harris at the Emages agency. According to Robert M., he attended therapy "off and on" because he had to pay for the sessions and did not have the money to do so on some occasions. When he completed his parole, Robert M. ceased attending therapy because he believed that he was "cleared." He has never had a court order entered barring him from seeing M.M.

The trial court found probable cause and an urgent and immediate necessity to remove M.M. to temporary custody.

On September 14, 2009, the paternity test results were read in open court. The results showed a "combined paternity of zero that [Robert M.] is the father of [M.M.]." The State informed the court that it was not seeking a finding of nonpaternity because the State wanted to obtain a certified copy of M.M.'s birth certificate and the VAP to determine whether Robert M. remained the legal father.

On September 29, 2009, the State informed the trial court that it intended to seek a finding of paternity. Robert M. also requested a finding of paternity. The trial court ordered the

1-09-3468

State to file a motion and brief in support of its request.  The State complied.

On October 8, 2009, M.M.'s *guardian ad litem* (GAL) requested leave to file a consolidated complaint for a declaration of nonpaternity with the pending petition for adjudication of M.M's wardship.  On November 5, 2009, the court entertained arguments on the GAL's request and granted leave, finding M.M. had standing to bring the complaint.  The GAL filed a verified complaint to declare the nonexistence of the parent-child relationship pursuant to section 7(b) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/7(b) (West 2008)).  The court construed Robert M.'s responsive motion as a motion to dismiss, which was denied.  The State subsequently withdrew its motion for declaration of paternity.

On November 19, 2009, following arguments, the trial court entered a finding of nonpaternity.  The trial court said:

"The Court agrees with [the GAL] that because the child was not in privity with the finding, the child has a right to contest the voluntary acknowledgment, and it does not operate as a judgment against the child.

***

The Court believes that the minor has an absolute

-9-

right to proceed in this case, as well as in that the

DNA test therefore controls, and that the voluntary

acknowledgment does not bind the minor."

DECISION

At issue is whether a minor may successfully challenge the paternity of a man who signed a VAP and birth certificate, but was later found not to be the biological father based on DNA testing results.

This issue is a matter of statutory construction, which we review *de novo*. <u>People ex rel. Department of Public Aid v. Smith</u>, 212 Ill. 2d 389, 396-97, 818 N.E.2d 1204 (2004). The primary goal of statutory interpretation is to construe the statute in order to ascertain and give effect to the legislature's intent. <u>Smith</u>, 212 Ill. 2d at 397. The best indicator of legislative intent is applying plain and ordinary meaning to the language of the statute itself. <u>People v. Pack</u>, 224 Ill. 2d 144, 147, 862 N.E.2d 938 (2007).

The statute at issue provides:

"An action to declare the non-existence of the parent and child relationship may be brought by the child, the natural mother, or a man presumed to be the father under subdivision (a)(1) or (a)(2) of Section 5 of this Act. Actions brought by the child, the natural

mother or a presumed father shall be brought by

verified complaint."  750 ILCS 45/7(b) (West 2008).

Robert M. contends M.M. is estopped from bringing an action

to declare the nonexistence of their relationship under section

7(b).

The doctrine of collateral estoppel bars the relitigation of

an issue addressed by a court of competent jurisdiction in a

later action between the same parties or their privies in the

same or a different cause of action.  Simcox v. Simcox, 131 Ill.

2d 491, 496, 546 N.E.2d 609 (1989).  The cause of action at issue

here is Robert M.'s paternity and the establishment of a parent-

child relationship as a result of the VAP.  Section 5(a)(3) of

the Parentage Act provides that a man is presumed to be the

natural father of the child if "he and the child's natural mother

have signed an acknowledgment of paternity in accordance with

rules adopted by the Department of Healthcare and Family Services

under Section 10-17.7 of the Illinois Public Aid Code."  750 ILCS

45/5(a)(3) (West 2008).  The presumption is conclusive unless

rescinded by the earlier of two dates, neither of which was done

here.  750 ILCS 45/5(b) (West 2008).  Moreover, a parent-child

relationship may be established by voluntarily signing and

witnessing a VAP (750 ILCS 45/6(a) (West 2008)) and may be

challenged in court only on the basis of fraud, duress, or

1-09-3468

mistake of fact (750 ILCS 45/6(d) (West 2008)), which was not done here. "Notwithstanding any other provisions of this Act, paternity established in accordance with subsection (a) has the full force and effect of a judgment entered under this Act ***." 750 ILCS 45/6(b) (West 2008).

M.M.'s GAL, however, contends that, because M.M. was not a party or in privity with Robert M. or Shante M. in the "cause of action," she is not barred from challenging that judgment. We agree. There is no dispute that M.M. was not a party to the signing of the VAP. We also find M.M. was not in privity with Robert M. or Shante M. when they executed the document. A line of parentage cases hold that a minor is not in privity with his mother in a paternity action and therefore is not barred from bringing his own paternity action. See Department of Public Aid ex rel. Stark v. Wheeler, 248 Ill. App. 3d 749, 751, 618 N.E.2d 1311 (1993); In re Parentage of Mayberry, 222 Ill. App. 3d 1008, 1011, 584 N.E.2d 533 (1991); Department of Public Aid ex rel. Skelton v. Liesman, 218 Ill. App. 3d 437, 439-40, 578 N.E.2d 310 (1991); Maller v. Cohen, 176 Ill. App. 3d 987, 991, 531 N.E.2d 1029 (1988). Support for the holding is found in the differing interests of the minor and the mother, in addition to the differing statute of limitations for the minor and the mother to

assert paternity actions. Liesman, 218 Ill. App. 3d at 441.

Moreover, it has been noted in dissolution proceedings that a minor is not in privity with his mother when the minor's interests are not represented by a GAL. See In re Parentage of Rodgers, 279 Ill. App. 3d 648, 654, 665 N.E.2d 36 (1996); In re Marriage of Klebs, 196 Ill. App. 3d 472, 483, 554 N.E.2d 298 (1990); Simcox, 131 Ill. 2d at 499 (Ryan, J., specially concurring). But see In re Parentage of Griesmeyer, 302 Ill. App. 3d 905, 915-16, 707 N.E.2d 72 (1998) (the minor was barred from relitigating the issue of paternity when the minor was represented by a GAL during dissolution proceedings where paternity was litigated). M.M. was not represented by a GAL when Robert M. and Shante M. signed the VAP. The GAL was first appointed to represent M.M. in this case on July 28, 2009. M.M. was not estopped from filing her complaint.

We now turn to the statute at issue. The clear language of the statute demonstrates that M.M., by and through her GAL, had standing to bring the disputed action. Section 7(b) provides, in relevant part: "[a]n action to declare the non-existence of the parent and child relationship may be brought by the child, the natural mother, or a man presumed to be the father under subdivision (a)(1) or (a)(2) of Section 5 of this Act." 750 ILCS 45/7(b) (West 2008). The statute plainly says that a child may

bring a petition to establish nonpaternity. The statute does not restrict the child's ability to do so.

Robert M.'s argument to the contrary is misinformed. Robert M. contends that M.M. could not bring the disputed action because Robert M. is not presumed to be the father pursuant to section 5(a)(1) or (a)(2) of the Parentage Act; rather, Robert M. is M.M.'s legal father pursuant to section 5(a)(3) as a result of the VAP. The statutory language relied on by Robert M., however, only modifies a *father's* ability to bring an action to declare the nonexistence of a parent-child relationship. It does not restrict the child's rights. An absurd result would occur if we read the statute as suggested by Robert M. Robert M.'s interpretation misses the mark and is in no way confirmed by the plain language of the statute. The language of the statute does not support Robert M.'s interpretation. When the statutory language is clear and unambiguous, we may not resort to other constructive aids. People v. Wooddell, 219 Ill. 2d 166, 171, 847 N.E.2d 117 (2006). Further, "we will not read exceptions, conditions, or limitations into a statute that the legislature did not express if the statutory language is clear and unambiguous," as it is here. In re Christopher K., 217 Ill. 2d 348, 364, 841 N.E.2d 945 (2005).

The cases relied upon by Robert M. are distinguishable:

1-09-3468

Smith involves section 7(b-5) of the Parentage Act and the ability of a *man* who signed a VAP to bring an action to declare the nonexistence of a parent-child relationship (Smith, 212 Ill. 2d at 407); and In re Parentage of G.E.M., 382 Ill. App. 3d 1102, 890 N.E.2d 944 (2008), the trial court held that a *mother* could not challenge the paternity of a man with whom she signed a VAP where neither party timely rescinded the VAP and the man did not allege it was signed under fraud, duress, or mistake of fact. G.E.M., 382 Ill. App. 3d at 1113.

We need not address Robert M.'s bare contention that the trial court was prejudiced against him. Robert M. fails to present any argument or cite to any legal authority to show that the portion of the trial proceedings quoted at length demonstrates the trial court was prejudiced against him such that the proceedings were unfair. Robert M.'s contention violated Supreme Court Rule 341(h)(7) and is therefore waived. 210 Ill. 2d R. 341(h)(7). Nevertheless, our review of the record does not support the allegation that the trial court was prejudiced against Robert M.

CONCLUSION

We affirm the judgment of the trial court.

Affirmed.

HALL, P.J., and PATTI, J., concur.

-15-

1-09-3468

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

_In re_ M.M., a Minor,

Respondent-Appellee

(The People of the State of Illinois,

Petitioner-Appellee,

v.

Robert M.,

Respondent-Appellant).

No. 1-09-3468

Appellate Court of Illinois
First District, FIRST DIVISION

May 21, 2010

Justice Bertina E. Lampkin authored the opinion of the court:

Presiding Justice Hall and Justice Patti concur.

Appeal from the Circuit Court of Cook County.
The Hon. Helaine L. Berger, Judge Presiding.

**COUNSEL FOR RESPONDENT-APPELLANT**
Steven O. Ross, Chicago, IL 60614

**COUNSEL FOR MINOR-RESPONDENT-APPELLEE**
Bruce H. Bornstein, Chicago, IL 60603