# Illinois Official Reports

## Appellate Court

---

### *In re A.A.*, 2014 IL App (5th) 140252

---

| | |
|---|---|
| Appellate Court Caption | *In re* A.A., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Matthew A., Respondent-Appellant (Caitlin S., Respondent-Appellee)). |
| District & No. | Fifth District<br>Docket No. 5-14-0252 |
| Filed | October, 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an investigation of the conditions at the residence of a mother with four children and the subsequent placement of the children in the custody of the DCFS, the trial court properly granted the petition filed by the guardian *ad litem* appointed to represent one of the children seeking to vacate the voluntary acknowledgment of paternity of one child signed by the mother's live-in boyfriend and a declaration that there was no parent-child relationship between the child and the boyfriend, since DNA tests showed that another man, now deceased, was the biological father of the child, and on appeal, the appellate court rejected the boyfriend's contention that the trial court should have applied the best interests of the child standard rather than the clear and convincing evidence standard in making its decision, and the cause was remanded for further proceedings, including consideration of the petition to intervene filed by the parents of the deceased father. |
| Decision Under Review | Appeal from the Circuit Court of Jefferson County, Nos. 13-JA-54, 14-F-17; the Hon. Timothy R. Neubauer, Judge, presiding. |
| Judgment | Affirmed and remanded. |

Counsel on
Appeal

Edwin J. Anderson and L. James Hanson, both of Mt. Vernon, for appellant.

Douglas R. Hoffman, State's Attorney, of Mt. Vernon (Patrick Delfino, Stephen E. Norris, and Jennifer Camden, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

E. Joyce Randolph, of Mt. Vernon, for appellee Caitlin S.

Panel

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Stewart concurred in the judgment and opinion.

## OPINION

¶ 1    Matthew A. signed a voluntary acknowledgement of paternity with regard to the minor, A.A. (date of birth April 26, 2013). DNA testing later revealed that Matthew A. is not the biological father of A.A., but that Cort H., who is now deceased, is A.A.'s biological father. A guardian *ad litem* appointed to represent the interests of A.A. filed a petition to declare the nonexistence of a parent-child relationship between Matthew A. and A.A., which the trial court granted. Matthew A. now appeals from the order of the circuit court of Jefferson County declaring the nonexistence of a parent-child relationship between him and A.A. The issue raised in this appeal is whether the trial court applied the correct standard in evaluating the petition filed by the guardian *ad litem* and erred in granting the petition to vacate Matthew A.'s parental relationship with A.A. We affirm.

¶ 2                                    BACKGROUND
¶ 3    The instant case originally began as a petition for adjudication of wardship, No. 13-JA-54, filed by the State following a Department of Children and Family Services (DCFS) investigation into the conditions in the house where A.A. was living with his 22-year-old mother, Caitlin S., and her three other children, J.S., A.S., and P.S. Matthew A. was also living at the home and is the biological father of P.S. Matthew A. signed a voluntary acknowledgement of parenthood after the birth of A.A. Jakob S., the former husband of Caitlin S., is the biological father of J.S. and A.S.

¶ 4    On June 13, 2013, an agreed temporary custody order was entered, awarding temporary custody of all four children to the guardianship administrator of DCFS. A.A. was only six weeks old at the time. Caitlin S. was ordered to undergo a psychiatric evaluation, and the State requested DNA testing be ordered to determine if Jakob S. or Matthew A. was the father of P.S.

¶ 5        A review hearing was held on September 23, 2013, at which time it was disclosed that a DNA test had also been ordered for A.A. because even though Matthew A. signed a voluntary acknowledgement of paternity, Caitlin S. was unsure of paternity. Caitlin S. acknowledged it was possible that the biological father of A.A. was actually Cort H., who died on August 18, 2013. A DCFS representative testified that collection for DNA testing of A.A. and Matthew A. would be done that day. The representative also advised that DNA testing revealed that Jakob S. was not the father of P.S. At the time of the hearing, J.S. and A.S. were living in one foster home, and P.S. and A.A. were living in another foster home.

¶ 6        On November 15, 2013, an adjudicatory hearing was held. Caitlin S. and Matthew A. were represented by the same attorney, and a guardian *ad litem* appeared on behalf of all four children. DCFS workers testified about troublesome conditions at the house where Caitlin S. resided with her children and Matthew A. The house and children were both filthy and unkempt, and the children, ages five and younger, were left at the home on their own on occasion. Caitlin S. testified, denying most of the allegations.

¶ 7        Matthew A. testified that he is the biological father of P.S. He stated that while he originally believed he was the biological father of A.A., "unfortunately, that's not so." He testified, however, that he is willing to accept the responsibility for all four of the children.

¶ 8        Following the hearing, the trial court entered an order finding the allegations of neglect and injurious environment made in the petition had been proven against Caitlin S. and Matthew A. Because DNA testing excluded Matthew A. as A.A.'s biological father, the trial court ordered further DNA testing to determine whether Cort H. was the biological father. DNA testing was conducted by using samples provided by Cort H.'s parents, Gloria H. and Larry H.

¶ 9        A docket entry made by the trial court on January 21, 2014, notes that the trial court had been advised by the attorney representing Caitlin S. and Matthew A. that they "broke up." The docket entry further provides that DNA testing revealed that Matthew A. is not the biological father of A.A. and that the guardian *ad litem* was trying to decide whether or not to join Cort H.'s parents in the case. The trial court appointed a separate attorney for Matthew A.

¶ 10       On February 10, 2014, Gloria H. and Larry H. filed a petition to intervene in which they asserted that DNA testing reveals that they are the biological grandparents of A.A. and, as such, they have "a direct interest in this case in that if the [c]ourt terminates the rights of the minor child's parents, they desire to adopt [A.A.]" A copy of the DNA test results was attached as exhibit A and reveals that there is a 99.84% probability that Gloria H. and Larry H. are the biological grandparents of A.A.

¶ 11       On February 18, 2014, a dispositional hearing was conducted. Both Caitlin S. and Matthew A. were present. The parties agreed to a standard disposition with temporary custody and guardianship of the four minors being given to DCFS. A service plan for Caitlin S. and Matthew A. was put into place. The trial court admonished Caitlin S. and Matthew A. that they would have to cooperate with DCFS and the terms and conditions of the service plan or risk termination of parental rights.

¶ 12       On February 18, 2014, the guardian *ad litem* filed a motion to declare the nonexistence of a parent-child relationship between A.A. and Matthew A. in which she asked the trial court to "vacate the voluntary acknowledgment of paternity signed by Matthew [A.] and declare Cort [H.] the minor child's biological father." This was styled as a new case, No. 14-F-17.

- 3 -

¶ 13    On February 21, 2014, a review hearing was conducted on the petition to intervene and the guardian *ad litem*'s motion to declare the nonexistence of a parent-child relationship. Matthew A.'s attorney acknowledged that the guardian *ad litem* had the right to challenge the voluntary acknowledgement of paternity on behalf of A.A. Ultimately, the trial court granted leave to file the petition to declare the nonexistence of a parent-child relationship, noting that if Cort H. were alive "the law would confer him standing to file his own family law action seeking to declare his paternity." The trial court postponed consideration of the petition to intervene until the motion to declare the nonexistence of a parent-child relationship was decided. Counsel for Gloria H. and Larry H. agreed that his clients' right to intervene would only arise if the voluntary acknowledgement of paternity was vacated and Cort H.'s paternity was recognized.

¶ 14    On March 17, 2014, a hearing was conducted at which time the trial court noted that Matthew A. filed a response to the petition to declare the nonexistence of a parent-child relationship in which he acknowledged that DNA testing identified Cort H. as the biological father of A.A., but asserted that it would not be in the best interests of A.A. to vacate Matthew A.'s voluntary acknowledgement of paternity. Matthew A. also filed a motion to dismiss the petition to intervene. The trial court noted that No. 13-JA-54 and No. 14-F-17 were consolidated for purposes of the hearing that day.

¶ 15    Prior to testimony being taken, Matthew A.'s attorney specifically stated:

"I would be prepared to move forward for hearing on the Petition, essentially resting on the record that both parties have admitted that−that Matthew [A.] was not the biological father and that Cort [H.] was. This was not easy to do. I told [Matthew A.] this in private and I say it again. I know he cares for the child. I also know *** other parties were worried this might give up a−a leg up to the biological grandparents. And I don't make any representation today about what should happen down the road as far as placements. I just couldn't find any reason to adhere to a legal fiction that Matthew [A.] was the father when I know, in fact, who is.

So I−I would be prepared to have that matter called for hearing and let Your Honor make a decision to whether or not the voluntary acknowledgment of paternity would be set aside."

Caitlin S. was then called as a witness.

¶ 16    Caitlin S. testified that she knew all along that Cort H. was the biological father of A.A. and that when she told Cort H. that he was the father, he denied it, and that was in large part the reason they broke up. When A.A. was conceived, Caitlin S. was still married to Jakob S., so when she delivered A.A., Jakob S. had to sign a denial of paternity, which he did. She tried to contact Cort H., but was unable to reach him, so Matthew A. signed a voluntary acknowledgement of paternity. Caitlin S. believed someone had to acknowledge paternity before she would be permitted to leave the hospital; however, she admitted that when Matthew A. signed, it was Matthew A.'s intent that he would raise A.A. as his own. She admitted to having some trouble with Gloria H. and Larry H. in the past, but felt that they should have custody of A.A. if she did not. She specifically stated that she did not believe Matthew A. should be considered A.A.'s father, stating as follows:

"There's no emotional attachment there. There is a difference between being a father and being a dad. You have to have a special connection and you cannot hate the place

- 4 -

that it comes from. [Matthew A.] loves [A.A.] as far as I know, as far as I've heard, but he still hates Cort. And that half of [A.A.] belongs to Cort."

Caitlin S. said she was concerned Matthew A. would interfere with A.A.'s relationship with his biological paternal grandparents.

¶ 17    After Caitlin S. testified, the hearing was continued until March 21, 2014. On that day Caitlin S. was cross-examined by Matthew A.'s attorney. Caitlin S. admitted Matthew A. provided financially for A.A. and assisted her in parenting, including changing diapers. She also thought Matthew A. had a bond with A.A., but she was "not exactly sure" if that was the case.

¶ 18    Matthew A. testified that he was residing with Caitlin S. when A.A. was conceived and believed he might be the father of A.A. when he signed the voluntary acknowledgement of paternity. At one point, Caitlin S. told him that Cort H. was unable to have children. However, Matthew A. admitted that he only knew there was a possibility he was the father of A.A., but he also knew it was possible he was not the father.

¶ 19    Matthew A. testified he works full time for 4M at Continental General Tire and hoped to get hired by the tire company itself. He said he and Caitlin S. have been in a relationship for four years and have a biological son, P.S., born on August 3, 2011. He found out that Caitlin S. was also seeing Cort H., but he forgave her and remained with her throughout her pregnancy with A.A. He was with her when she gave birth to A.A. He still visits with A.A., and there was a visit scheduled for that day. P.S. and A.A. reside in the same foster home, and he visits with both of them. He testified that P.S. and A.A. have a strong bond.

¶ 20    Amanda, a CASA volunteer, testified she was assigned to a case involving A.A. She had one meeting with Caitlin S. and Matthew A. at their home, but it only lasted 30 minutes and was then moved to the DCFS office because there was no food for the children in the house. She had several meetings with the parents, but only saw Matthew A. and A.A. together on one occasion, October 24, 2013, at which time she witnessed that "[t]here was a lot of affection between [Matthew A.] and [A.A.]" Based upon this one-time meeting, she testified that "as long as [Matthew A.] continues services with DCFS that he should remain [A.A.'s] father."

¶ 21    Counsel for Matthew A. argued it continued to be in the best interests of A.A. that Matthew A. remain his legally recognized father. The guardian *ad litem* argued that the best interests standard did not come into play until the correct father was determined. The trial court stated it would apply the clear and convincing standard to the determination of parentage even though it believed the preponderance of the evidence standard was correct.

¶ 22    A DCFS worker, Carrie Donnen, testified that she worked with Caitlin S. and the family from January to June 2013 and had seen Matthew A. interact with A.A. numerous times. She testified it would not be in A.A.'s best interests to remove Matthew A. as the legal father.

¶ 23    On May 8, 2014, the trial court entered an order declaring the nonexistence of a parent-child relationship on the basis that DNA testing established that Matthew A. was not the biological father of A.A, but the actual father was Cort H. The trial court vacated the voluntary admission of paternity signed by Matthew A. and declared a parent-child relationship between Cort H. and A.A.

¶ 24    On May 19, 2014, a hearing was held on the petition to intervene filed by Gloria H. and Larry H. Counsel for Matthew A. informed the trial court that an appeal would be filed from

the order vacating the voluntary admission of paternity and that an appeal would trigger an automatic stay of custody proceedings. The trial court noted that the petition to intervene was consolidated with the parental rights case. The trial court then granted the petition to intervene. Matthew A. filed a timely notice of appeal.

¶ 25                                                    ANALYSIS

¶ 26        The issue we are asked to address is whether the trial court applied the correct standard in evaluating the petition filed by the guardian *ad litem* and erred in granting the petition to vacate Matthew A.'s parental relationship with A.A. Matthew A. argues the trial court should have applied the best interests standard in evaluating the petition to vacate the voluntary acknowledgment of paternity because that is the standard to be applied in all cases involving children. Matthew A. asks that the case be reversed with a finding that the best interests of A.A. are served by reinstating Matthew A. as the legal father of A.A. or, in the alternative, asks that the case be remanded with directions for consideration of the guardian *ad litem*'s petition with a focus on the best interests of A.A. Caitlin S. and the State respond that the trial court applied the correct standard, as the only question before the trial court was whether there was clear and convincing evidence that Cort H. was the biological father of A.A.

¶ 27        Matthew A. admits that the guardian *ad litem*, acting on behalf of the minor, has standing to bring an action challenging the paternity of a father who is the father only because he has signed a voluntary acknowledgment of paternity. *In re M.M.*, 401 Ill. App. 3d 416, 928 N.E.2d 1281 (2010). In *In re M.M.*, Robert M. signed a voluntary acknowledgement of paternity at the time of M.M.'s birth. However, during the course of later proceedings alleging abuse and neglect, DNA testing established that Robert M. was not the biological father of M.M. Our colleagues in the First District found that the clear language of section 7(b) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/7(b) (West 2008)) conferred standing on M.M. to bring a petition through a guardian *ad litem* to establish the nonpaternity of Robert M. *In re M.M.*, 401 Ill. App. 3d at 422, 928 N.E.2d at 1286. That court also rejected Robert M.'s argument that the voluntary acknowledgment of paternity was conclusive on the issue of paternity, finding that this would lead to an "absurd result" and "restrict the child's rights." *In re M.M.*, 401 Ill. App. 3d at 423, 928 N.E.2d at 1287.

¶ 28        Under section 5 of the Parentage Act, a man is presumed to be the natural father of a child if he and the child's mother have signed a voluntary acknowledgment of paternity. 750 ILCS 45/5(a)(3) (West 2010). Section 6(d) of the Parentage Act specifically states that "[a] signed acknowledgment of paternity entered under this Act may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenging party." 750 ILCS 45/6(d) (West 2010). Section 5(b) of the Parentage Act provides that a presumption arising under section 5(a) is not conclusive and may be rebutted by clear and convincing evidence−evidence such as DNA test results establishing that another man is in fact the child's biological father. See 750 ILCS 45/11 (West 2010).

¶ 29        The instant case is akin to a termination of parental rights case where initially a clear and convincing standard applies at a fitness hearing, but that gives way to a lesser, preponderance, standard of proof at the best interests phase. *In re D.T.*, 212 Ill. 2d 347, 366, 818 N.E.2d 1214, 1228 (2004). In termination cases, the basis for the change in standards of proof was succinctly explained by our supreme court as follows:

"Following a finding of unfitness, *** the focus shifts to the child. The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated. Accordingly, at a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." (Emphases in original.) *In re D.T.*, 212 Ill. 2d at 364, 818 N.E.2d at 1227.

As in a termination case, we do not believe that the best interests standard comes into play where the evidence clearly shows that Matthew A. is not the biological father of A.A.

¶ 30    The DNA testing in the instant case establishes that Matthew A. is not the biological father of A.A. We agree with the guardian *ad litem* that before the best interests of the child standard can be applied to determine a parent's rights to custody, visitation, and support, the party must first be a parent. Just because Matthew A. signed a voluntary acknowledgment of paternity, that does not make him the biological father of A.A. Thus, the clear and convincing standard is applicable here, not the best interests standard. The clear and convincing standard underscores the importance of the biological father's interest in his child. See *In re D.T.*, 212 Ill. 2d at 366, 818 N.E.2d at 1228. A holding to the contrary would lead to the type of absurd results predicted by *In re M.M.*

¶ 31    We agree with the guardian *ad litem* that a man who has signed a voluntary acknowledgment of paternity and lists himself as the father on a child's birth certificate is only presumed to be the father of the child, but that presumption can be rebutted by clear and convincing evidence that another man is the biological father of the child. Here, the DNA test clearly and convincingly shows that there is no biological relationship between Matthew A. and A.A. While Cort H. is deceased and cannot have custody or visitation with A.A., we cannot ignore the fact that DNA testing confirms that Cort H. is the biological father of A.A. Establishing Cort H. as A.A.'s biological father rather than relying on Matthew A.'s voluntary acknowledgment of paternity will certainly have future implications. For example, as Caitlin S. points out, A.A. should be able to receive social security survivor benefits through Cort H. We commend Matthew A.'s paternal instincts and actions regarding A.A., but we cannot alter established facts.

¶ 32    It remains to be seen, however, whether Cort H.'s parents, Gloria H. and Larry H., have any rights with regard to A.A. We make no decision today regarding the petition to intervene, as it is not a final and appealable order. A judgment is only considered final where it terminates the litigation between the parties on the merits or it disposes of the rights of the parties, either on the whole controversy or a separate part of it. *In re A.H.*, 207 Ill. 2d 590, 594, 802 N.E.2d 215, 217 (2003). The trial court's decision to allow Gloria H. and Larry H. to intervene in no way sets or fixes their rights, if any, regarding custody and visitation with A.A. Accordingly, we take no action with regard to the petition to intervene.

¶ 33    For the foregoing reasons, we affirm the order of the circuit court of Jefferson County granting the petition to vacate Matthew A.'s voluntary admission of paternity and declaring a parent-child relationship between Cort H. and A.A. and remand for further proceedings consistent with this opinion.

¶ 34    Affirmed and remanded.