NOTICE

Decision filed 02/19/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180227-U

NO. 5-18-0227

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| *In re* GUARDIANSHIP OF C.D.M. | ) | Appeal from the |
| | ) | Circuit Court of |
| (Linda Williams, | ) | Washington County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-P-21 |
| | ) | |
| Dwaine McDonald and | ) | |
| Eric Petersen, | ) | Honorable |
| | ) | Daniel J. Emge, |
| Respondents-Appellees). | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice Welch and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: The statute of limitations set forth in the Illinois Parentage Act of 2015 applied to a minor who was represented by a guardian *ad litem* in a case brought under the Illinois Juvenile Court Act where parentage was at issue. The statute of limitations for disestablishment of parentage began to run when the minor, through her guardian *ad litem*, became aware that her legal father was not her biological father. The parties did not argue that there was any error in the circuit court's dismissal of the minor's claim for establishment of parentage and, as such, the circuit court's dismissal is affirmed.

1

¶ 2                                    I. BACKGROUND

¶ 3    This case involves the parentage of a minor child, C.D.M. (minor), born July 9, 2010. On the day after the minor's birth, the Illinois Department of Children and Family Services (DCFS) received a hotline call indicating that the minor was believed to be "at risk" if released to her mother, Adrienne Crabtree (mother). DCFS became involved and determined that a plan should be instituted to place the minor in protective custody, and that certain interventions were required for both the mother and the putative father, Dwaine McDonald.

¶ 4    On July 12, 2010, mother and McDonald signed a "Voluntary Acknowledgment of Paternity" (VAP) establishing Crabtree as the mother and McDonald as the father of the minor. On July 13, 2010, a petition for adjudication of wardship was filed by the State, alleging it was in the best interests of the minor that she be made a ward of the court. The petition was filed in Jefferson County, Illinois, case 2010-JA-39 (juvenile case) and alleged that the minor was neglected pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2010))). The next day, the circuit court held a hearing on the petition and mother and McDonald were both present. On July 14, 2010, the court entered a temporary custody order finding probable cause to believe the minor was neglected and that it was in the best interests of the minor that she be made a ward of the court. DCFS was appointed temporary guardian. The court also ordered mother and McDonald to "submit to DNA testing to determine paternity."

¶ 5    The DNA report was returned prior to the adjudicatory hearing in the juvenile case and was filed on October 25, 2010, showing that McDonald was excluded as the minor's

biological father. On December 20, 2010, the circuit court entered an interim order which stated: "Custody of minor is placed with father, Dwaine McDonald. Guardianship remains with DCFS." The interim order went on to establish visitation with the mother and maternal grandmother, Linda Williams.

¶ 6    On September 8, 2011, mother filed a "Petition to Vacate Voluntary Acknowledgement of Paternity" pursuant to section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2010). Because mother's petition was filed more than 60 days after the VAP was signed, mother was required to prove that she signed the VAP under fraud, duress, or material mistake of fact.[1] 750 ILCS 45/6(d) (West 2010). In support of her petition, mother alleged that she was under a great deal of stress after the minor's birth and was not taking her prescribed medication for diagnosed mental health issues. She alleged that these facts proved that she did not knowingly or voluntarily execute the VAP. On November 10, 2011, the Jefferson County court held a hearing on mother's petition. Williams was present at the hearing, represented by counsel, and filed written closing arguments. The minor was 16 months old at the time of the hearing and was represented by her guardian *ad litem* (GAL), who participated in the hearing and also filed a written closing argument asserting that the petition to vacate the VAP should be denied. On March 2, 2012, the circuit court denied mother's petition to vacate the VAP, finding that mother had failed to show by "clear and convincing evidence that she was

---

[1]Pursuant to section 5(b) of the Illinois Parentage Act of 1984, the presumption of parentage was conclusive if the putative mother and father had signed a VAP, unless the acknowledgment of parentage was rescinded within 60 days after the date set forth in the VAP. 750 ILCS 45/5(b) (West 2010).

bereft of the quality of mind essential to the making of a contract, or in this case, the signing of a VAP."

¶ 7    On May 16, 2011, Williams was granted intervener status in the juvenile case. On May 10, 2013, an adjudicatory hearing was held and an order was entered by the circuit court finding that the minor was neglected as defined by section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2012)), in that the minor was in an environment that was injurious to her welfare. The docket sheet indicates that McDonald was present for the adjudicatory hearing, and the adjudicatory order indicates he was present with his attorney. The order also indicates that Williams was present, with her attorney.  Mother, the minor through her GAL, and DCFS were also represented. A dispositional hearing was held directly following the adjudicatory hearing. The "agreed dispositional order" again lists McDonald's attorney as "attorney for father." As to McDonald, the dispositional order found that "[t]he father is fit, able and willing to care for, protect, train, educate, supervise or discipline the minor and he will not endanger the health, safety or well-being of the minor. Father has agreed to subsidized guardianship with maternal grandmother, Linda Williams." The circuit court granted unsupervised visitation "for father from 9:00 a.m. to 7:00 p.m. every Saturday."

¶ 8    On June 19, 2013, DCFS filed a petition on behalf of the minor seeking to appoint Williams as guardian of the person of the minor in Jefferson County case 2013-P-54 (guardianship case). The petition alleged that McDonald was the father of the minor. On June 24, 2013, a GAL was appointed to represent the minor. That same day, the circuit court entered an order appointing Williams as the guardian of the minor and McDonald

4

consented to the entry of this order. The order authorized Williams to have, subject to the direction of the court, "the care, management, and custody" of the minor. The court also terminated DCFS's wardship and guardianship of the minor in the juvenile proceedings, No. 10-JA-39, and closed the juvenile case. The circuit court entered a visitation schedule with McDonald by separate order in the guardianship case.

¶ 9 On November 14, 2016, McDonald filed a petition to modify visitation based on an interfering work schedule and a claim that Williams had refused to allow visitation with the minor. Williams filed an answer denying that she had refused visitation to McDonald. On April 26, 2017, Williams moved to transfer the case to Washington County, as the minor had relocated there with Williams. By order entered May 11, 2017, the guardianship case was transferred to Washington County for the convenience of the parties.

¶ 10 On October 20, 2017, Williams, as guardian of the minor, filed a counterpetition on the minor's behalf to declare the nonexistence of the parent-child relationship between McDonald and the minor and for other relief. Because of the transfer of the guardianship case to Washington County, the circuit court appointed a new GAL. The court also appointed counsel for McDonald to represent him on the allegations in the counterpetition.

¶ 11 Williams filed an amended counterpetition on October 27, 2017, consisting of two counts. Count I sought to declare the nonexistence of the parent-child relationship between McDonald and the minor pursuant to section 205(a) of the Illinois Parentage Act of 2015. 750 ILCS 46/205(a) (West 2016). Count II sought the establishment of

5

parentage between the minor and Eric Petersen. It does not appear from the record that Petersen was served with the amended counterpetition or given notice of any of the proceedings, and he did not appear or participate in any hearings held on said counterpetition. The counterpetition set forth the factual circumstances surrounding the birth of the minor, the signing of the VAP by mother and McDonald, and the alleged neglect by mother. The counterpetition further explained how Williams became the custodian and guardian of the minor. Williams attached the VAP to the counterpetition. Williams also averred that a DNA test had been performed which indicated that McDonald should be excluded as the father of the minor child. A copy of the DNA report was attached to the counterpetition and was dated October 25, 2010.

¶ 12    On November 9, 2017, McDonald filed a motion to dismiss the amended counterpetition pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)). The basis of this motion was that the amended counterpetition was time-barred because it was not brought within two years after Williams, as guardian of the minor, knew or should have known that McDonald had been excluded as the father of the minor through DNA testing. McDonald alleged that Williams knew "as early as October 25, 2010, when the DNA results were received, or at least as of March 2, 2012," when a hearing had been held to determine whether mother had lacked the mental capacity to sign the VAP. Therefore, pursuant to section 205(b) of the Illinois Parentage Act of 2015, McDonald asked the court to dismiss the counterpetition, as time-barred. 750 ILCS 46/205(b) (West 2016). On January 11, 2018, mother entered her appearance and waived notice of any further proceedings. In her entry of appearance, mother

6

indicated that she was agreeable with the entry of a determination that McDonald was not the father of the minor, as any other finding would require her to have an ongoing relationship with a man who was not the father of her child.

¶ 13 On March 2, 2018, the parties and their attorneys appeared and argued McDonald's motion to dismiss the amended counterpetition. The court took the matter under advisement. On March 13, 2018, the circuit court entered a written order that dismissed the amended counterpetition in its entirety, with prejudice. The minor appeals the circuit court's ruling on the motion to dismiss, and this matter is properly before this court.

¶ 14                                    II. ANALYSIS

¶ 15 The first issue we must address is the jurisdiction of this court to hear the merits of this appeal. The Illinois Appellate Court has an independent duty to examine its appellate jurisdiction even if the parties do not raise the issue. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67. In addition, we cannot obtain jurisdiction over an appeal through consent or waiver of appellate jurisdiction. *Gaynor v. Burlington Northern & Santa Fe Ry.*, 322 Ill. App. 3d 288, 289 (2001).

¶ 16 The appellant asserts that we have jurisdiction over the order dismissing the amended counterpetition pursuant to Illinois Supreme Court Rule 303 (eff. July 1, 2017), which concerns appeals from final judgments. We disagree.

¶ 17 The proceedings in this case began when McDonald filed a petition to modify visitation. Williams, on behalf of the minor, filed an amended counterpetition for the disestablishment of McDonald's parentage and for other relief, including the

7

establishment of parentage with Petersen. As noted above, the circuit court dismissed the amended counterpetition with prejudice. Specifically, the circuit court's order states, "That the Amended Counter-Petition to Declare the Non-Existence of the Parent Child Relationship between Dwaine McDonald and [C.D.M.] and for Other Relief filed by Linda Williams, as guardian of [C.D.M.], is dismissed, with prejudice." The language of the order, therefore, dismissed with prejudice the entire amended counterpetition, which included both counts of the amended counterpetition. This dismissal of the amended counterpetition was not a final order under Rule 303, because McDonald's petition to modify visitation was still pending.

¶ 18    Pursuant to Illinois Supreme Court Rule 304(a), an "appeal may be taken from a final judgment as to one or more but fewer than all *** claims *only* if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." (Emphasis added.) Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Here, the circuit court has not made any Rule 304(a) findings. Therefore, the order dismissing the amended counterpetition is not appealable under Rule 303 or Rule 304(a).

¶ 19    Illinois Supreme Court Rule 304(b) (eff. Mar. 8, 2016), however, categorizes certain interlocutory orders that are appealable without the special finding required by Rule 304(a). Relevant to the appeal in the present case, Rule 304(b)(1) allows an appeal without a special finding from a judgment or order entered in the administration of a guardianship or similar proceeding which finally determines a right or status of a party. Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). Here, as we explain below, the circuit court's order dismissing the amended counterpetition had the effect of finally determining that

8

McDonald was the legal father of the minor. Accordingly, we conclude that we have jurisdiction over the order dismissing the amended counterpetition under Rule 304(b)(1). We now turn to the merits of the order dismissing the amended counterpetition.

¶ 20                    A. Count I of the Amended Counterpetition

¶ 21    The next issue we address concerns the circuit court's dismissal of count I of the amended counterpetition as being time-barred. The circuit court dismissed the amended counterpetition with prejudice pursuant to section 2-619 of the Code of Civil Procedure. Pursuant to sections 2-619(a)(4) and (9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(4), (9) (West 2016)), a defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds: "(4) [t]hat the cause of action is barred by a prior judgment *** [or] (9) [t]hat the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."

¶ 22    Our review of a ruling on a section 2-619 motion to dismiss is *de novo*. *In re Paternity of Rogers*, 297 Ill. App. 3d 750, 754 (1998). In considering a section 2-619 motion, we accept all well-pleaded facts and the reasonable inferences drawn from those facts as true, and consider the pleadings, affidavits, and depositions. *Id*. Our inquiry on review, absent an issue of material fact, is whether the dismissal was proper as a matter of law. *Id*.

¶ 23    In the present case, in order to analyze the circuit court's dismissal order, we must first determine what statute of limitations applies to the relief requested in the amended counterpetition. In count I of the amended counterpetition, Williams, on behalf of the

9

minor, C.D.M., brought a disestablishment claim pursuant to section 205(a) of the Illinois Parentage Act of 2015. 750 ILCS 46/205(a) (West 2016). Section 205(b) of the Illinois Parentage Act of 2015 sets out a statute of limitations that applies to causes of action to declare the nonexistence of a parent-child relationship, including those brought by the minor. Section 205(b) provides that the cause must be commenced within two years after the petitioner "knew or should have known of the relevant facts." *Id.* § 205(b). Specifically, that section reads as follows:

"(b) An action to declare the non-existence of the parent-child relationship brought under subsection (a) of this Section shall be barred if brought later than 2 years after the petitioner knew or should have known of the relevant facts. The 2-year period for bringing an action to declare the non-existence of the parent-child relationship shall not extend beyond the date on which the child reaches the age of 18 years. ***" *Id.*

¶ 24 Here, McDonald moved to dismiss the amended counterpetition arguing that it was time-barred under section 205(b) because the petitioner (the minor) knew, or should have known, that McDonald was not the biological father of the minor as early as October 25, 2010, when the DNA results were received, or at least as of March 2, 2012, when the hearing to determine whether mother had lacked capacity to sign the VAP was held. The minor was a party to the juvenile case and represented by her GAL during both events. Considering the specific facts of this case, we agree and hold that count I of the amended counterpetition is untimely under section 205(b) of the Illinois Parentage Act of 2015.

10

¶ 25    As we set out in the background section above, on July 12, 2010, mother and McDonald both signed the VAP, which identified McDonald as the father of the minor. Pursuant to a court order entered the next day, a DNA test was performed. On October 25, 2010, the report of the DNA test was put before the court. The report revealed that McDonald was not the biological father of the minor. DCFS was appointed the temporary guardian of the minor. On December 20, 2010, the court gave McDonald custody of the minor and established a visitation schedule for mother and Williams.

¶ 26    Under article 3 of the Illinois Parentage Act of 2015:

"(a) *** a valid voluntary acknowledgment filed with the Department of Healthcare and Family Services, as provided by law, is equivalent to an adjudication of the parentage of a child and confers upon the acknowledged father all of the rights and duties of a parent.

(b) Notwithstanding any other provision of this Act, parentage established in accordance with Section 301 of this Act has the full force and effect of a judgment entered under this Act and serves as a basis for seeking a child support order without any further proceedings to establish parentage." 750 ILCS 46/305(a), (b) (West 2016).

¶ 27    The VAP is conclusive unless rescinded by the earlier of two dates, 60 days after the date of the acknowledgment of parentage was signed, or the date of an administrative or judicial proceeding relating to the child in which the signatory is a party, neither of which was done here. *Id.* § 307. After the expiration of the two aforementioned timeframes, section 309 of the Illinois Parentage Act of 2015 specifically states that: "[a]

voluntary acknowledgment and any related denial may be challenged only on the basis of fraud, duress, or material mistake of fact by filing a verified petition under this Section within 2 years after the effective date of the voluntary acknowledgment or denial, as provided in Section 304 of this Act." *Id.* § 309(a).

¶ 28    On September 8, 2011, mother filed a petition to vacate the VAP, alleging she was under extreme stress and had not been taking her medications as ordered for mental health issues. On November 10, 2011, the Jefferson County circuit court held a hearing on mother's petition. Notably, Williams and the minor, through her GAL, were present at and participated in this hearing. The circuit court denied mother's petition on March 2, 2012.

¶ 29    It is undisputed that between July 12, 2010, the date of executing the VAP, and October 25, 2010, when the DNA results were put before the court, no one filed on behalf of the minor to have the existence of the parent-child relationship with McDonald declared invalid. During this timeframe the minor could not be said to have gained the requisite knowledge that McDonald was not her biological father. No petition to declare the nonexistence of a parent-child relationship between the minor and McDonald was filed, however, until Williams filed the amended counterpetition at issue in this case on October 27, 2017, seven years later.

¶ 30    On appeal, Williams, as guardian on behalf of the minor, contends that the statutory time period of two years should not be applied, as the public policy of Illinois contained within the applicable Parentage Act was to recognize the right of every child to a legal relationship between her "natural or adoptive parents." *J.S.A. v. M.H.*, 224 Ill. 2d

182, 198 (2007). Williams contends that if we were to apply the two-year statute to the minor, this court would be ratifying an untruth, rather than correcting the error that occurred in the first instance. While we concede the technical truth that McDonald is not the biological father of the minor, we also acknowledge that the parent-child relationship is more than simply the result of a DNA test.

¶ 31    Since he signed the VAP, McDonald has taken an active role in the care of the minor and has continually maintained a parent-child relationship with her. He has appeared at the proceedings involving the minor and demonstrated a willingness to continue as her father. Nevertheless, through her present guardian, Williams, the minor argues that the question presented was whether the knowledge of Williams or the minor's GAL should be imputed to the minor child. Williams' attorney argued that the minor was not aware of what was going on in the juvenile case and should have the right to contest her parentage until two years beyond her eighteenth birthday. We disagree.

¶ 32    Generally, it is true that the minor was not a party or in privity with her mother or McDonald in the signing of the VAP and is therefore not barred from challenging that judgment. *In re M.M.*, 401 Ill. App. 3d 416, 422 (2010). This is because no child can file a petition in his own right. *Doe v. Montessori School of Lake Forest*, 287 Ill. App. 3d 289, 298 (1997). There was no attorney appointed for the minor at the time the VAP was signed. A minor is legally dependent on her legal representatives to file a claim and is bound by what that representative does. *Flynn v. Flynn*, 283 Ill. 206, 219 (1918). Legal representation of a person invokes status as a party or privy, whether it be counsel for a parent or counsel for a minor. *In re Griesmeyer*, 302 Ill. App. 3d 905, 913 (1998). In the

present case, the minor's legal representatives at the time that DNA evidence was returned were DCFS, as temporary guardian of the minor, and the minor's GAL.

¶ 33　Because Williams has no independent right at stake and has brought the amended counterpetition on behalf of the minor, the focus of our inquiry must be on when the minor knew, or should have known, that McDonald was not her biological father. Inherent in that question, as the minor was an infant at the time the DNA results were filed in her juvenile case, is the issue of whether the knowledge of the GAL is imputed to the minor for purposes of calculating the statute of limitations period.

¶ 34　The minor's GAL was appointed in the juvenile case at the time of the shelter care hearing, making her a party in the juvenile case in July 2010. The minor's GAL was aware in October 2010 of the DNA results showing that McDonald was not the minor's biological father when they were filed in the juvenile case. Further, the minor, through her GAL, participated in and submitted closing arguments in her mother's petition to vacate the VAP, filed on September 8, 2011, after receipt of the DNA results. The minor was represented by a GAL at the time the juvenile case was dismissed and at the time when guardianship was granted to Williams in a separately filed guardianship action. The guardianship case relied on McDonald's legal status as father and was entered with his consent. Further, in that action the court established visitation between the minor and McDonald based upon his legal status as the minor's father.

¶ 35　Under the facts of this case, we find that the minor failed to file an action to declare the nonexistence of a parent-child relationship with McDonald within two years of learning he was not the minor's biological father, as was required by the Illinois

14

Parentage Act of 2015. 750 ILCS 46/205(b) (West 2016). Unlike a petition to adjudicate parentage under article 6 of the Parentage Act of 2015 (*id.* § 602), which broadly authorizes a variety of individuals to file an action to determine the existence of the father and child relationship, one of those being the minor's guardian, subsection 205(b) explicitly limits its application to actions brought by the minor, the natural mother, or a man presumed to be the father for reasons related to marriage. *Id.* § 205(b).

¶ 36 The Juvenile Court Act sets forth the rights of the minor to representation during juvenile proceedings:

"[T]he minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel. ***

No hearing on any petition or motion filed under this Act may be commenced unless the minor who is the subject of the proceeding is represented by counsel." 705 ILCS 405/1-5(1) (West 2016).

¶ 37 The Juvenile Court Act requires the court to appoint a GAL to represent the minor, providing that the court shall appoint a GAL upon the filing of the petition that a minor is abused or neglected. *Id.* § 2-17(1). The GAL is charged with representing the best interests of the minor and with presenting recommendations to the court consistent with that duty. *Id.* The procedural rights assured to minors "shall be the rights of adults unless

15

specifically precluded by laws which enhance the protection of such minors." *Id.* § 1-2(3)(a). When read together, the minor's right to representation is clearly established, and "the right to representation afforded to minors is almost coextensive to that afforded to adults." *In re A.W.*, 248 Ill. App. 3d 971, 976 (1993).

¶ 38 The GAL, acting on behalf of the minor, has standing to bring an action challenging the paternity of a father who is the father only because he has signed a VAP. *In re M.M.*, 401 Ill. App. 3d at 422. In *Griesmeyer*, the First District identified numerous instances where the proposition was adopted by this court that the appointment of a GAL confers party status on the GAL, and by extension, the minor. *In re Griesmeyer*, 302 Ill. App. 3d at 909-15. The *Griesmeyer* court noted that legal representation of a person invokes status as a party or privity. *Id.* at 913. Under the facts of *Griesmeyer*, the court found that: "the minor's paternity began as a dispute, continued through the legal process with the minor represented by a guardian *ad litem*, and ended as an uncontested judicial finding. Under these circumstances, to exclude the minor as a nonparty or nonprivy of the dissolution judgment where the minor was represented by a court-appointed guardian *ad litem* renders such legal representation a nullity." *Id.* at 915.

¶ 39 In the present case, knowledge of the GAL is imputed to the minor, as the minor was a party in the juvenile case and was bound by the actions of her legal representative. The minor's GAL was in possession of sufficient facts to file a petition to declare the nonexistence of the parent-child relationship between the minor and McDonald in October 2010, when DNA results were returned to the court. The GAL's role, when faced with a presumed father under a VAP and no established biological father, was to decide

16

that the filing of a paternity action was or was not in the best interests of the minor. *Majidi v. Palmer*, 175 Ill. App. 3d 679, 685 (1988).

¶ 40    Based on the above, we find that the minor was a party to the underlying actions in this matter and, through her GAL, has known since October 25, 2010, that McDonald was not her biological father. The minor's legal interests were fully represented at all times through representation by her GAL. The minor's claim is time-barred.

¶ 41    The circuit court's order is written in two parts. The first portion of the order addresses the minor's own knowledge of the DNA results gained by and through her GAL in the juvenile case, an issue which is fully addressed above. The second portion finds, alternatively, that Williams' knowledge also time-bars the minor's claim as brought by Williams. As we agree with the circuit court's first position, that the minor herself is time-barred in bringing a petition to declare the nonexistence of the parent-child relationship, we need not address the alternative, that Williams' knowledge additionally time-barred the minor's claim.

¶ 42                    B. Count II of the Amended Counterpetition

¶ 43    As explained above, the circuit court's order dismissed the amended counterpetition in its entirety, with prejudice. On appeal, the appellant does not challenge the circuit court's dismissal of count II. Accordingly, we affirm the circuit court's dismissal of count II with prejudice. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("[p]oints not argued are waived"); *Turcios v. The DeBruler Co.*, 2015 IL 117962, ¶ 43 ("As to count V of plaintiffs' complaint *** plaintiffs make no argument that this count may and

should proceed independent of the wrongful death count. For this reason, we also affirm the trial court's dismissal with prejudice of count V.").

¶ 44                                    III. CONCLUSION

¶ 45    For the foregoing reasons, the judgment of the circuit court of Washington County is affirmed.


¶ 46    Affirmed.